[File No. 6401.]

STATE OF NORTH DAKOTA EX REL. W. R. HAGGART, et al., Appellants, v. LEE NICHOLS, State Tax Commissioner of the State of North Dakota, et al., Respondents.

(265 N. W. 859.)

Opinion filed March 7, 1936.

*H. C. Young, Richardson, Thorp & Wattam, Murphy & Toner,* and *Sullivan, Fleck & Sullivan,* for Appellants.

*P. O. Salhre,* Attorney General, and *T. A. Thompson,* Assistant Attorney General, for Respondents.

CHRISTIANSON, J. This action involves the constitutionality of the state income tax law. 1925 Supplement, §§ 2346A-1–2346A-50, as amended by chapters 239, 240, Laws 1925; chapters 283, 284, Laws 1931; chapter 253, Laws 1933; and chapter 271, Laws 1935.

It was instituted to restrain the tax commissioner, the attorney general and the state treasurer from enforcing the law. It is alleged in the complaint that the relators now are and for many years have been residents of the state of North Dakota and that a portion of the net income of each of them is taxable under the provisions of the state income tax law as income received from property, both real and personal, and that a portion of such net income is taxable as income received for personal services. It is further alleged that according to the provisions of the law a person who fails to make a return as therein prescribed is made guilty of a misdemeanor and rendered subject to fine and imprisonment, and also is made liable for a penalty up to $1,000.00. It is further alleged that the defendants will enforce the law against the relators unless they are prevented from so doing by appropriate judgment.

The state income tax law provides for a tax at graduated rates, ranging from 1% on net incomes not in excess of $1,000 up to 15% on all net incomes in excess of $15,000. The law is administered by the State Tax Commissioner, and returns of taxpayers are required to be filed with him.

: These provisions are mentioned in the complaint, and it is alleged that the law violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and the following three provisions of the State Constitution:

Sec. 13. "No person shall . . . be deprived of life, liberty or property without due process of law." .

Sec. 176. "Taxes shall be uniform upon the same class of property, including franchises, within the territorial limits of the authority levying the tax. . . ."

Sec. 179. "All taxable property except as hereinafter in this section provided, shall be assessed in the county, city, township, village or district in which it is situated, in the manner prescribed by law. . . ."

The defendants demurred to the complaint on the ground that it fails to state facts sufficient to constitute a cause of action. The demurrer was sustained and the plaintiffs have appealed.

Appellants do not question that the legislature had power to levy, or provide for the levy, of an income tax but they contend: (1) that a tax on income is a tax on property and that, hence, such tax is limited by the rule of uniformity prescribed by § 176 of the state constitution and the rule of localized situs of assessment prescribed by section 179 of the state constitution; (2) that even if the tax should be considered an excise tax it would still be invalid for the reason that the rule of uniformity prescribed by § 176 of the constitution applies to "all taxes"; (3) that under the rule of uniformity the same rate of taxation must be applied to all incomes without regard to the amount thereof and that the graduated tax rate violates this rule; (4) that under the rule of localized situs of assessment the income tax must be assessed in the city, town, village or county in which the property which produced the income is situated; (5) that the provisions of the North Dakota income tax law are so arbitrary, capricious and confiscatory that they violate section 13 of the state constitution and the due process and equal protection of law clauses of the Fourteenth Amendment to the Federal Constitution.

In appellants' brief on this appeal their contentions are succinctly stated thus:

"Plaintiffs contend that the income tax law taxes 'property' and that the tax is not uniform but is graduated, the amount varying on the same class of property by virtue of the graduated provisions. Also, that the property is not assessed in the local subdivision, but is assessed by the tax commissioner at Bismarck.

"Plaintiffs further contend that the North Dakota income tax law is arbitrary, capricious and confiscatory, violating § 13 of the North Dakota Constitution and the Fourteenth Amendment to the Federal Constitution. . . .

"Even if it (the income tax) should be considered an excise, yet it would be invalid for the . . . reason that the word 'all taxes' in the uniformity clause would include excises, as well as property taxes."

Before entering upon a discussion of the specific questions raised by the appellant it is proper to consider the fundamental rules which must be applied in the determination thereof.

The sole ultimate question presented to this court is whether the state income tax law is violative of certain provisions of the state and Federal constitutions and, hence, null and void.

It is elementary that every reasonable presumption is in favor of the constitutionality of a statute. This presumption is conclusive, unless it is clearly shown that the enactment is prohibited by the Constitution of the state or of the United States. The only test of the validity of an act regularly passed by a state legislature is whether it violates any of the express or implied restrictions of the state or Federal Constitutions. State ex rel. Linde v. Taylor, 33 N. D. 76, 85, 86, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583.

"The courts sit not to review or revise the legislative action, but to enforce the legislative will; and it is only where they find that the legislature has failed to keep within its constitutional limits, that they are at liberty to disregard its action; and in doing so, they only do what every private citizen may do in respect to the mandates of the courts when the judges assume to act and to render judgments or decrees without jurisdiction. 'In exercising this high authority, the judges claim no judicial supremacy; they are only the administrators of the public will. If an act of the legislature is held void, it is not because the judges have any control over the legislative power, but

because the act is forbidden by the Constitution, and because the will of the people, which is therein declared, is paramount to that of their representatives expressed in any law.'" Cooley, Const. Lim. 7th ed. p. 228.

Under the Constitution of North Dakota "all governmental power is vested in the legislature, except such as is granted to the other departments of the government, or expressly withheld from the legislature by constitutional restrictions. State ex rel. Standish v. Boucher, 3 N. D. 389, 395, 56 N. W. 142, 144, 21 L.R.A. 539 ; O'Laughlin v. Carlson, 30 N. D. 213, 152 N. W. 675." State ex rel. Linde v. Taylor, 33 N. D. 76, 86, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583.

The presumption of validity applies with great force to a statute involving taxation:—for constitutional limitations on legislative power in the field of taxation must be construed in light of the fundamental principles that the power of taxation is not dependent upon a constitutional grant but is an attribute of sovereignty inherent in the state (Davis v. McLean County, 52 N. D. 857–870, 204 N. W. 459 ; 1 Cooley, Taxn. 3d ed. pp. 43, et seq. ; 26 R. C. L. p. 27), is distinctly legislative in its nature, and belongs exclusively to the legislative branch of the government. (Davis v. McLean County, supra ; 26 R. C. L. p. 26 ; 11 Enc. U. S. Sup. Ct. Rep. p. 274 ; N. D. Const., §§ 174–181.) State v. Cheyenne County, 127 Neb. 619, 256 N. W. 67.

Cooley (1 Cooley, Taxn. 4th Ed.) says:

"The state government has inherent power to levy taxes. This means the proper department of the state. In the creation of three distinct departments of the government, and the apportionment of power between them, the authority to tax necessarily falls to the legislative. This is manifest from the slightest consideration of what taxation is. It is the making of rules and regulations under which the necessary revenues for all the needs of government are to be apportioned among the people and collected from them." (§ 64, p. 160)

"The legislature must determine all questions of state necessity, discretion or policy involved in ordering a tax and in apportioning it; must make all the necessary rules and regulations which. are to be observed in order to produce the desired returns, and must decide upon the agencies by means of which collections shall be made. The courts

cannot review the determination of the legislature in regard thereto. They cannot review the wisdom or advisability or expediency of a tax. . . . So long as no constitutional limitations are exceeded, or the constitutional rights of the citizen violated in the directions pre-scribed for enforcing the tax, the legislation is of supreme authority, and the courts, as well as all others, must obey. Taxes may be, and often are, oppressive to the persons and corporations taxed; they may appear, to the judicial mind, unjust and even unnecessary but this can constitute no reason for judicial interference." § 67, pp. 165–167)

. "The legislature has unlimited discretion as to the persons, property, or occupations to be taxed, where there are no constitutional restric-tions, provided the property is within the territorial jurisdiction of the state." (§ 71, pp. 176, 177)

. "The people have created a legislative department for the exercise of the legislative power; and within that power lies the authority to prescribe the rules of taxation, and to regulate the manner in which those rules shall be given effect." (§ 74, p. 185)

. "This power to tax, inherent in the legislature, is supreme with only two limitations, viz.: (1) provisions in the Federal or State Consti-tution and (2) inherent limitations on the power to tax. This is well settled. When it is said that the power of taxation is absolute or su-preme, what is meant is that it is wholly within the discretion of the legislature, except in so far as it has been delegated (and even a dele-gation of power may be revoked), and, except as limited by constitu-tional provisions or inherent limitations. . . . The subjects of taxa-tion are persons, property and business. . . . And the amount of the taxation may be determined by the value of the property, or its use, or its capacity, or its productiveness. It may touch business in the almost infinite forms in which it is conducted, in professions, in commerce, in manufactures and in transportation. Unless restrained by provisions of the Federal Constitution, the power of the state as to the mode, form and extent of taxation is unlimited, where the subjects to which it ap-plies are within her jurisdiction.

. "To classify at the expense of some repetition, the discretion extends to (1) The persons, property or occupations to be taxed; (2) the amount or rate of the tax; . . . (4) the mode, method or kind of tax; . . .

(6) the situs. for taxation of property.; (7) the method of collection, etc. . . . As to all these, unless limited by the Federal.or State Constitution or by inherent limitations on the power to tax, the legislature has unlimited discretion." (§ 69, pp. 171–174)

Appellants' contention that the state income tax law is violative of. §§ 176 and 179 of the state constitution is predicated largely upon the proposition that the income tax is in reality a tax upon property; and much of appellants' brief and oral argument is devoted to an argument tending to establish that the income tax is a property tax. The adjudicated cases disclose a decided conflict upon the question whether a tax upon income from property is a tax on property, or an excise tax, or, as has been intimated by some of the authorities, a tax in a class by itself although partaking somewhat of the nature both of an excise tax and a property tax.

"The view which we take of the matter renders it unnecessary to consider whether or not the law under discussion imposed" an excise tax or a property tax (Cream of Wheat Co. v. Grand Forks County, 253 U. S. 325, 328, 64 L. ed. 931, 933, 40 S. Ct. 558); for the members of the court are all agreed that under §§ 176 and 179 of the state constitution the legislature has wide discretionary powers to classify property for. the purposes of taxation, and that the standard of uniformity under section 176 of the state constitution is substantially the same as the standard of equality under the Fourteenth Amendment to the constitution of the nation. The pivotal question as to the validity of the tax therefore becomes one as to the power of the legislature to provide for the imposition thereof under the conditions prescribed in the act rather than the particular name to be attributed to it. Grand Forks County v. Cream of Wheat Co. 41 N. D. 330, 340, 170 N. W. 863; State ex rel. Fargo v. Wetz, 40 N. D. 299, 318, 168 N. W. 835, 5 A.L.R. 731; Wagner v. Covington, 251 U. S. 94, 102, 64 L. ed. 157, 167, 40 S. Ct. 93.

"There is no particular magic in a name or even in a legislative designation of a particular form of taxation. Though the legislature may call that which is distinctly a tax by some other name it nevertheless remains a tax." State ex rel. Fargo v. Wetz, 40 N. D. 299, 318, 168 N. W. 835, 5 A.L.R. 731.

"The substance and not the shadow determines the exercise of the validity of the power" (Postal Teleg. Cable Co. v. Adams, 155 U. S. 688, 698, 39 L. ed. 311, 316, 15 S. Ct. 268, 360, 5 Inters. Com. Rep. 1) ; and "if the tax purports to be laid upon a subject within the taxing power of the state, it is not to be condemned by the application of any artificial rule, but only where the conclusion is required that its necessary operation and effect is to make it a prohibited exaction." Kansas City, Ft. S. & M. R. Co. v. Botkin, 240 U. S. 227, 233, 60 L. ed. 617, 619, 36 S. Ct. 261.

"It hardly is necessary to repeat," said the Supreme Court of the United States (Wagner v. Covington, supra) "that when this court is called upon to test a state tax by the provisions of the Constitution of the United States, our decision must depend not upon the form of the taxing scheme, or any characterization of it adopted by the courts of the state, but rather upon the practical operation and effect of the tax as applied and enforced. The state court could not render valid, by misdescribing it, a tax law which in substance and effect was repugnant to the Federal Constitution; neither can it render unconstitutional a tax that, in its actual effect, violates no constitutional provision, by inaccurately defining it."

Sections 176 and 179 of the constitution were amended at the general election in November, 1914. Prior to such amendment, § 176 of the constitution provided: "Laws shall be passed taxing *by uniform value all property according to its true value in money. . . .*" (The remainder of the section provided for certain exemptions to be created by general law among which was included "Personal property to any amount not exceeding in value $200 for each individual liable to taxation." It also authorized the levy of a tax on the gross earnings of railroad companies to be paid in lieu of all state, county and local taxes). Section 179 of the constitution provided: "All property except as hereinafter in this section provided shall be assessed in the county, city, town, village or district in which it is situated in the manner prescribed by law." (The remainder of § 179 related to the assessment of railroads, express companies, etc., and provided that such properties should be assessed by the State Board of Equalization at their actual value and that such assessed value should be apportioned to the coun-

ties, cities, towns, villages and districts in which such companies are located or through which they are operated.) By the amendment made in 1914, § 176 of the state constitution was changed to read as follows: "Taxes shall be uniform upon the same class of property including franchises within the territorial limits of the authority leveling the tax."

And § 179 was amended by striking therefrom the provision requiring an apportionment of the assessed valuation of railroads and other public utility properties to counties and other political subdivisions. The two amendments, that is, the amendments of both § 176 and § 179, were submitted as one proposal. (40 N. D. 314).

Section 176 was again changed by amendment submitted at the general election in 1918. The amendment then adopted provided that "the legislature may by law exempt any or all classes of personal property from taxation, and within the meaning of this section, fixtures, buildings and improvements of every character, whatsoever, upon land shall be deemed to be personal property. Except as restricted by this article the legislature may provide for raising revenue and fixing the situs of all property for the purpose of taxation."

In State ex rel. Fargo v. Wetz, 40 N. D. 299, 168 N. W. 835, 5 A.L.R. 731, this court had occasion to consider the limitations placed upon the legislative power by §§ 176 and 179 of the state constitution as amended in 1914. In that case the constitutionality of the motor vehicle license act was challenged. That act (chapter 156, Laws 1917) provided for a graduated license fee in lieu of a combined pre-existing license fee and ad valorem tax and this court was confronted with the question of the power of the legislature to effect such change and impose such tax under the limitations of §§ 176 and 179 of the constitution. (40 N. D. 307). In the decision in that case it was pointed out that fundamental changes had been made in §§ 176 and 179 of the constitution by the amendment approved at the general election in 1914. And it was held that the legislature was no longer required "to provide for the taxing of all property by uniform rule, according to its true value;" that § 176 as amended "purports to be only a limitation designed to preclude arbitrary classification, and to require uniformity only within a class and within the territorial limits of a taxing authority;" that "the only limitation upon the power of the legislature to thus

classify property is the 14th Amendment to the Federal Constitution, which, by requiring equal protection of the laws precludes purely arbitrary classification;" that the legislature has the power to withdraw a class of personal property, as automobiles, from assessment for local purposes, and subject the same to a tax assessed, collected and expended on a state-wide basis; and that as a result of the amendment in 1914 "the effect of § 179 is simply to provide that property which is required to be taxed for local purposes be given a situs within the district in which it is to be taxed," and that "the localization only applies to property which is required by the legislature to bear a local tax."

In the decision in State ex rel. Fargo v. Wetz, supra, this court said:

"We are strongly of the conviction that chapter 156 was intended to authorize a license fee in lieu of all other taxes, and that the act will have to stand or fall as so interpreted. . . . We are thus compelled to consider the constitutional objections urged against the validity of the Motor Vehicle Tax Law, treating the same as substituting a graduated license fee in lieu of the combined pre-existing license fee and ad valorem tax.

"We are, then, confronted with the question of the power of the legislature to effect such a change in the tax laws under the limitations of the Constitution. . . .

"By the amendment which was made in 1914, *the basic mandate of universal uniform ad valorem assessment was changed.* The amendment provided merely that 'taxes shall be uniform upon the same class of property, including franchises within the territorial limits of the authority levying the tax.' Sess. Laws 1913, chap. 103. Section 179 was amended (chap. 103, Sess. Laws 1913, § 2) by striking therefrom the provisions requiring an apportionment of the assessed valuation of public utility properties to local municipalities.

"Being reminded at this point of the effect of the Motor Vehicle License Law to remove from motor vehicles the burden of general and local taxation, we are required to answer the inquiry whether it is competent for the legislature to strike from the tax rolls of local municipalities property not legally exempt, and thus deprive them of sources of revenue which, it is contended, are secured to them by the Constitution. . . .

"It will be noted first that § 176 no longer commands the legislature to provide for the taxing of all property by uniform rule, according to its true value. On the contrary, *the section purports to be only a limitation designed to preclude arbitrary classification, and to require uniformity only within a class and within the territorial limits of a taxing authority.* Section 179, as now amended, while retaining the pre-existing requirement of local assessment, except as to enumerated public utilities, entirely does away with the necessity for a distribution of the assessed value of utility properties to the local taxing units. These two sections of the amendment of 1914 are significant of a decided change in the pre-existing constitutional policy. It is now neither required that all of the taxable property within a district shall be apportioned thereto, nor that the revenues to be raised from property taxes within the territorial jurisdiction of the municipality levying the tax shall be derived from all of the taxable property within the district. For instance, it may now be provided that the state may derive its tax revenue from railroads and express companies to the exclusion of other property; whereas minor municipalities may be authorized to derive their revenues from the general property including such utilities as telephone and telegraph companies, and be denied the right to tax the railroads and express companies. The effect of such a law would, of course, be to exempt the class of property referred to, wholly or in part, from other taxes for the support of other municipalities in which the property may be located; but in reality the property would not be exempt, because it would be bearing that portion of the general burden of taxation which the legislature deemed just. The only limitation upon the power of the legislature to thus classify property is the 14th Amendment to the Federal Constitution, which, by requiring equal protection of the laws, precludes purely arbitrary classification. (Citations.) Under such a scheme property cannot be said to be exempt, provided it is made to bear what the legislature deems to be its just proportion of tax burden. The foregoing propositions based on the amendment are wholly beyond dispute because clearly within its very language.

"But does the requirement that all taxable property except that of the enumerated utilities shall be assessed in the county, city, township,

etc., in which it is situated, any longer require that all taxable property not excepted be placed upon the tax rolls of the designated local units? If so, the legislature has no authority to effect its withdrawal.
. . .

"When the entire amendment is read together we think it reasonably clear that the effect of § 179 is simply to provide that property which is required to be taxed for local purposes be given a situs within the district in which it is to be taxed, and that certain properties shall be assessed by the state board of equalization. . . .

"We are impressed that the localization only applies to property which is required by the legislature to bear a local tax. . . .

"There is no particular magic in a name, or even in a legislative designation of a particular form of taxation. Though the legislature may call that which is distinctly a tax by some other name, it nevertheless remains a tax. . . .

"When § 176 was so amended as to authorize the classification of property within reasonable limits and to require uniformity only within the territorial limits of the authority levying the tax, it is manifest from what has previously been said in this opinion that *the legislature became free to adopt any reasonable measure for determining an equitable basis for contributions to the revenues, and it is equally clear that it was no longer contemplated that there should be an annual assessment of property at its true value.* Consequently, the very basis upon which the limitation contained in § 174 was originally intended to apply was no longer fixed by a mandatory requirement of uniform ad valorem assessment. Therefore, *whenever the legislature sees fit to adopt some other reasonable basis upon which to determine the amount of tax that may be exacted from an individual than the value of the property owned by him, it does so in pursuance of an authority which is expressly recognized by the Constitution as now amended,* and it cannot be said to be exceeding the revenue limitations prescribed in § 174. Section 174 means now very much the same as it has meant from the beginning, viz., that the legislature shall be precluded from raising revenues based upon an ad valorem assessment of property which will exceed in any one year 4 mills on the dollar of the assessed valuation of the taxable property in the state. To construe it otherwise

would be not only to ascribe a meaning that would have precluded the proper exercise of the legislative power to tax. railroad companies according to gross earnings, under § 176, as it originally stood, but would also prevent the proper use of the authority which it clearly has under § 176 as amended to provide for a separation of sources of state and local revenues, and to exact the same *according to any fair method of classification that in its judgment is designed to meet the ends of justice.* . . .

"Had it been desired to limit the power of the legislature to prescribe *property taxes* in such a way as to permit no other kind of tax except one levied upon an ad valorem basis, it would seem that such a limitation would have been expressed in § 176. In the absence of such a provision, *it cannot be held that the legislature is precluded from laying a property tax upon any basis that will exact contributions according to an equitable standard and one which is free from the vice of arbitrary classification."*

In Northwestern Improv. Co. v. State, 57 N. D. 1, 220 N. W. 436, this court had occasion to consider the effect of the amendment to § 176 of the constitution, approved at the general election in 1918, and the limitation upon legislative power by §§ 176 and 179 as thus amended. In that case it was held that the classification adopted by the legislature was arbitrary and unreasonable and that consequently the statute was invalid. But the rules announced in State ex rel. Fargo v. Wetz, 40 N. D. 299, 168 N. W. 835, 5 A.L.R. 731, supra, were in no way qualified; they were reaffirmed and approved. In the decision in that case it was said:

"It is true that all owners of minerals severed from the surface are in the same class, but that is not a classification of property but of persons. The tax is not upon the person but on the property, and it is the property that must be placed in reasonable classes for the purpose of taxation. To be uniform property taxes must be laid with regard to the value, or some other characteristic of the property which justifies a classification."

In that case it was also held that under § 179 of the constitution "all real property not used directly or indirectly in the carrying of persons, property or messages must be assessed in the county, city,

township, village or district in which it is situated;" but that the legislature had power to fix the situs of personal property for the purposes of taxation.

It is apparent therefore that under the rules announced in State ex rel. Fargo v. Wetz, supra, and Northwestern Improv. Co. v. State, supra, the constitution of this state confers upon the legislature the widest discretion in classifying property for purposes of taxation that might be conferred upon it. In short, in this state the legislative power to classify property for purposes of taxation is subject only to the limitation against arbitrary classification imposed by the due process and equal protection clauses in the 14th Amendment to the Constitution of the United States. State ex rel. Fargo v. Wetz, supra. This is in harmony with the views expressed by the courts of other states and the Supreme Court of the United States in construing uniformity clauses in state constitutions. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102; Standard Lumber Co. v. Pierce, 112 Or. 314, 228 P. 812; Hardwick v. Wolcott, 98 Vt. 343, 129 A. 159, 39 A.L.R. 1222; Colgate v. Harvey, 107 Vt. 28, 175 A. 352; Lake Superior Consol. Iron Mines v. Lord, 271 U. S. 577, 581, 70 L. ed. 1093, 1101, 46 S. Ct. 627; State Tax Comrs. v. Jackson, 283 U. S. 527, 540, 75 L. ed. 1248, 1258, 51 S. Ct. 540, 73 A.L.R. 1464, 75 A.L.R. 1536; Fox v. Standard Oil Co. 294 U. S. 87, 79 L. ed. 780, 55 S. Ct. 333.

Under the holding in State ex rel. Fargo v. Wetz, supra, the legislature had authority "to provide for a separation of sources of state and local revenues and to exact the same according to any fair method of classification that in its judgment is designed to meet the ends of justice;" and to single out for special treatment a particular species or type of property and provide for taxation thereof "according to a method that is thought to be more appropriate for measuring the relative burden than would be the case if it were taxed according to valuation." Accordingly if incomes are deemed property the legislature might select incomes for special treatment and provide for a method of taxation different from that applied to other kinds of property. It might also classify incomes themselves as a basis for taxation subject only to the limitation against arbitrary classification imposed by the due process and equal protection clauses in the 14th Amendment to

the Constitution of the United States. The legislature also had authority to withdraw incomes from local taxation and subject them to a tax imposed, assessed and collected on a state-wide basis unless the tax on income can be said to be a tax on real property and, hence, controlled by the territorial requirement of assessment prescribed by § 179 of the constitution. If the tax in question here be considered as a tax on property, the questions resolve themselves to this: (a) Is there a reasonable basis for imposing such tax on incomes according to graduated rates; or did the legislature, in adopting such rates, prescribe arbitrary and unreasonable rules of taxation? (b) Is the income tax a tax on real estate within the purview of the requirement of § 179 of the constitution so that it must be assessed in the county, city, township, village or district in which it is situated?

(a) The limitations placed upon the taxing power of the state have been considered by the Supreme Court of the United States in many cases. In no case were they better stated than in Bail's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 236, 33 L. ed. 892, 895, 10 S. Ct. 533, where it is said:

"The provision in the 14th Amendment that no state shall deny to any person within its jurisdiction the equal protection of the laws was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their Constitution. . . . We think that we are safe in saying that the 14th Amendment was not intended to compel the state to adopt an iron rule of equal taxation."

In the case of Home Ins. Co. v. New York, 134 U. S. 594, 606, 607, 33 L. ed. 1025, 1031, 1032, 10 S. Ct. 593, the court said:

"But the Amendment (the fourteenth) does not prevent the classification of property for taxation—subjecting one kind of property to one rate of taxation, and another kind of property to a different rate—distinguishing between franchises, licenses, and privileges, and visible and tangible property, and between real and personal property."

In Dane v. Jackson, 256 U. S. 589, 597, 65 L. ed. 1107, 1113, 41 S. Ct. 566, the court said:

"Where . . . conflict with Federal power is not involved, a state tax law will be held to conflict with the 14th Amendment only where it proposes, or clearly results in, such flagrant and palpable inequality between the burden imposed and the benefit received, as to amount to the arbitrary taking of property without compensation,—'to spoliation under the guise of exerting the power of taxing.' Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 237, 33 L. ed. 895, 10 S. Ct. 533; Henderson Bridge v. Henderson, 173 U. S. 615, 43 L. ed. 831, 19 S. Ct. 553; Phillip Wagner v. Leser, 239 U. S. 220, 60 L. ed. 237, 36 S. Ct. 66. For other inequalities of burden or other abuses of the state power of taxation, the only security of the citizen must be found in the structure of our government itself."

In A. Magnano Co. v. Hamilton, 292 U. S. 40, 78 L. ed. 1109, 54 S. Ct. 599, the constitutionality of a statute imposing an excise tax on all butter substitutes sold in the state was assailed on the ground, among others, that it infringed the due process and equal protection of law clauses to the 14th Amendment of the Federal Constitution. In disposing of that question the United States Supreme Court said:

"Except in rare and special instances, the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution. (Citation of authorities.) And *no reason exists for applying a different rule against a state in the case of the Fourteenth Amendment.* (Citation of authorities.) That clause is applicable to a taxing statute such as the one here assailed only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes,

in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property."

In classifying subjects or property for the purposes of taxation, the nature or character of the subject or property furnishes one of the prime bases for classification.

If income be considered property and a tax on income a tax on property, then it is apparent that the character of the subject upon which the tax is imposed is so different from tangible real or personal property that there are good reasons why the legislature should single it out for special treatment and tax the same according to such method as "is thought to be more appropriate for measuring the relative burden than would be the case" (State ex rel. Fargo v. Wetz, supra) if the same were taxed on the same basis and by the same method as that employed in the taxation of tangible real or personal property. A tax on income differs from a tax on property in the ordinary acceptance of that term. It also differs from a tax on an occupation or a business. When a tax is imposed on property it contemplates that there is some thing of value upon which the tax may be imposed. The tax is imposed upon the property without regard to the ownership. Minneapolis & N. Elevator Co. v. Traill County, 9 N. D. 213, 82 N. W. 727, 50 L.R.A. 266.

When a tax is imposed upon an occupation or a business it is ordinarily laid without regard to whether or not the pursuit of the particular occupation or business produces an income or results in a loss. An income tax is imposed on the gain,—the amount of wealth which comes to a person during a given period of time, derived from capital, from labor, or from both combined. It is imposed "on the net income or revenue which passes into or through a man's hands within a prescribed period, a large share of which never finds permanent investment" (Reed v. Bjornson, supra). It seems clear that if an income tax be considered a tax on property, income as a subject of taxation is one of such distinct character as to lend itself to different standards of classification from those applied in the taxation of other forms of property; and that laying such tax at graduated or progressive rates, and creating classes for the application of such rates based upon differences in the amount of the net income of the

taxpayer, does not contravene the uniformity provision of § 176 of the state constitution, or the equal protection of law clause of the Fourteenth Amendment, or the due process clauses of the state and Federal Constitutions. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102, 103, — A.L.R. —; Standard Lumber Co. v. Pierce, 112 Or. 314, 228 P. 812; Knowlton v. Moore, 178 U. S. 41, 44 L. ed. 969, 20 S. Ct. 747; Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283, 42 L. ed. 1037, 18 S. Ct. 594; Shaffer v. Carter, 252 U. S. 37, 64 L. ed. 445, 40 S. Ct. 221; Lawrence v. State Tax Commission, 286 U. S. 276, 76 L. ed. 1102, 52 S. Ct. 556, 87 A.L.R. 374; Alderman v. Wells, 85 S. C. 507, 67 S. E. 781, 27 L.R.A.(N.S.) 864, 21 Ann. Cas. 193.

"The legislature has a broad discretion in the matter of classification. In taxation 'there is a broader power of classification than in some other exercises of legislation.'" 1 Cooley, Taxn. 4th ed. pp. 715, 716; Citizens' Teleph. Co. v. Fuller, 229 U. S. 322, 329, 57 L. ed. 1206, 1213, 33 S. Ct. 833.

In Knowlton v. Moore, 178 U. S. 41, 44 L. ed. 969, 20 S. Ct. 747, the contention was made that the progressive rate feature of the tax on legacies and inheritances in an Act of Congress was "so repugnant to fundamental principles of equality and justice that the law should be held to be void even though it transgresses no express limitation in the constitution." In disposing of that contention the court said:

"The review which we have made exhibits the fact that taxes imposed with reference to the ability of the person upon whom the burden is placed to bear the same have been levied from the foundation of the government. So, also, some authoritative thinkers, and a number of economic writers, contend that a progressive tax is more just and equal than a proportional one. In the absence of constitutional limitation, the question whether it is or is not is legislative, and not judicial. The grave consequences which it is asserted must arise in the future if the right to levy a progressive tax be recognized involves in its ultimate aspect the mere assertion that free and representative government is a failure, and that the grossest abuses of power are foreshadowed unless the courts usurp a purely legislative function." 178 U. S. 109, 44 L. ed. 996, 20 S. Ct. 747.

In Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283, 42 L. ed. 1037, 18 S. Ct. 594, the graduated inheritance tax law of Illinois was attacked on the ground that it violated the equal protection of the laws clause of the 14th Amendment. In the decision in that case it was said: "The state may distinguish, select, and classify objects of legislation, and necessarily this power must have a wide range of discretion. It is not without limitation, of course. . . . Two principles, therefore, must be reconciled in the Illinois Inheritance Law if it is to be sustained, the equality of protection of the laws guaranteed by the 14th Amendment, and the power of the state to classify persons and property. . . . In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things. . . . If the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied. In other words, the law operates 'equally and uniformly upon all persons in similar circumstances.' . . . It (the rule of equality of the 14th Amendment) only requires that the law imposing it shall operate on all alike under the same circumstances. The tax is not on money; it is on the right to inherit; and hence a condition of inheritance, and it may be graded according to the value of that inheritance. The condition is not arbitrary because it is determined by that value; it is not unequal in operation because it does not levy the same percentage on every dollar, does not fail to treat 'all alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed.'" 170 U. S. 294–300, 42 L. ed. 1043–1045, 18 Ct. 594.

In State Tax Comrs. v. Jackson, 283 U. S. 542, 75 L. ed. 1258, 51 S. Ct. 540, 73 A.L.R. 1464, 75 A.L.R. 1536, and Fox v. Standard Oil Co. 294 U. S. 87, 79 L. ed. 780, 55 S. Ct. 333, the Supreme Court of the United States held that an occupation or license tax upon the operation of mercantile establishments, graduated according to the number of stores owned, did not infringe upon the guarantees of the 14th Amendment. The court further held that such law did not violate a provision of the constitution of Indiana that the legislature "shall provide by law for a uniform and equal rate of assessment and taxation;" or a provision of the constitution of West Virginia that taxa-

tion shall be equal and uniform throughout the state. The Federal Supreme Court expressed the view in both cases "that the standard of uniformity under the constitution of the state was substantially the same as the standard of equality under the Fourteenth Amendment of the Constitution of the nation." 294 U. S. 102, 79 L. ed. 790, 55 S. Ct. 333.

In Stewart Dry. Goods Co. v. Lewis, 294 U. S. 550, 79 L. ed. 1054, 55 S. Ct. 525, the Supreme Court of the United States held that a gross sales tax which classifies vendors for the imposition of a varying rate of taxation solely by reference to the volume of their transactions denies the equal protection of the laws in violation of the 14th Amendment. In pointing out the distinction between a graduated gross sales tax so imposed and a graduated income tax based upon the amount of net income, and the reasons for the invalidity of the former and the validity of the latter, the court said:

"The argument based upon the asserted analogy to a tax upon net income graduated in accordance with the size of the income is unconvincing, for the exaction here demanded is not of that kind. . . .

"The assertion that a graduated income tax, like the graduated sales tax under consideration, ignores the varying rates of return upon investment of those carrying on similar enterprises is obviously inaccurate. An income levy by its very nature, assures equality of treatment, because the burden of the exaction varies with increase or decrease of return on capital invested and with the comparative success or failure of the enterprise. . . ."

In Shaffer v. Carter, 252 U. S. 37, 64 L. ed. 445, 40 S. Ct. 221, supra, the Supreme Court of the United States was required to determine the validity of the income tax law of Oklahoma. The statute there involved by its terms rendered "the entire net income from all property owned, and of every business, trade or occupation carried on" in Oklahoma "by persons residing elsewhere" subject to the income tax. The law was assailed on the ground that the state was without power to tax the income of a non-resident from property owned, or business, trade or occupation carried on, by him in Oklahoma. In disposing of that contention the court said:

"This radical contention is easily answered by reference to funda-

mental principles. In our system of government the states have general dominion, and, saving as restricted by particular provisions of the Federal Constitution, complete dominion over all persons, property, and business transactions within their borders; they assume and perform the duty of preserving and protecting all such persons, property, and business, and, in consequence, have the power normally pertaining to governments to resort to all reasonable forms of taxation in order to defray the governmental expenses. Certainly they are not restricted to property taxation, nor to any particular form of excises. In well-ordered society, property has value chiefly for what it is capable of producing, and the activities of mankind are devoted largely to making recurrent gains from the use and development of property, from tillage, mining, manufacture, from the employment of human skill and labor, or from a combination of some of these; gains capable of being devoted to their own support, and the surplus accumulated as an increase of capital. That the state, from whose laws property and business and industry derive the protection and security without which production and gainful occupation would be impossible, is debarred from exacting a share of those gains in the form of income taxes for the support of the government, is a proposition so wholly inconsistent with fundamental principles as to be refuted by its mere statement. That it may tax the land but not the crop, the tree but not the product, the business but not the profit derived from it, is wholly inadmissible.

"Income taxes are a recognized method of distributing the burdens of government, favored because requiring contributions from those who realize current pecuniary benefits under the protection of the government, and *because the tax may be readily proportioned to their ability to pay*. Taxes of this character were imposed by several of the states at or shortly after the adoption of the Federal Constitution."

In 1894 Congress enacted an income tax act (28 Stat. at L. 509, chap. 349). That act was held to violate the requirements of the Constitution of the United States, that "direct taxes shall be apportioned among the several states which may be included in this union according to their respective numbers" (U. S. Const., Art. 1, § 2); and "no . . . direct tax shall be laid, unless in proportion to the census or enumeration hereinbefore directed to be taken." (U. S. Const.

Art. 1, § 9). Pollock v. Farmers' Loan & T. Co. 157 U. S. 429, 601, 39 L. ed. 759, 826, 15 S. Ct. 673. Thereafter the constitution of the United States was amended by the adoption of Article 16 of the Amendments which reads: "The Congress shall have power to lay and collect taxes on incomes from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

Subsequent to the adoption of this Amendment Congress enacted an income tax act. The validity of that act was challenged on the ground, among others, that the graduated or progressive rates, and certain exemptions granted therein, were so arbitrary and unreasonable as to render the tax imposed by it wanting in due process. In considering the constitutional objections leveled at such income tax the Supreme Court of the United States (Brushaber v. Union P. R. Co. 240 U. S. 1, 60 L. ed. 493, 36 S. Ct. 236, L.R.A.1917D, 474, Ann. Cas. 1917B, 713) said:

"It is clear on the face of this text (the 16th Amendment) that it does not purport to confer power to levy income taxes in a general sense,—an authority already possessed and never questioned, or to limit and distinguish between one kind of income taxes and another, but that the whole purpose of the Amendment was to relieve all income taxes when imposed from apportionment from a consideration of the source whence the income was derived. . . .

"The statute provides that the tax should not apply to enumerated organizations or corporations, such as labor, agricultural or horticultural organizations, mutual savings banks, etc., . . .

"The statute levies one tax called a normal tax on all incomes of individuals up to $20,000, and from that amount up, by gradations, a progressively increasing tax, called an additional tax, is imposed. . . . The progressive tax and the exempted amounts, it is said, are based on wealth alone, and the tax is therefore repugnant to the due process clause of the 5th Amendment. . . .

"So far as the due process clause of the 5th Amendment is relied upon, it suffices to say that there is no basis for such reliance, since it is equally well settled that such clause is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other

words, that the Constitution does not conflict with itself by conferring, upon the one hand, a taxing power, and taking the same power away, on the other, by the limitations of the due process clause. (Citation of authorities) And no change in the situation here would arise even if it be conceded, as we think it must be, that this doctrine would have no application in a case where, although there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property; that is, a taking of the same in violation of the 5th Amendment; or, what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion. We say this because none of the propositions relied upon in the remotest degree present such questions. It is true that it is elaborately insisted that although there be no express constitutional provision prohibiting it, the progressive feature of the tax causes it to transcend the conception of all taxation and to be a mere arbitrary abuse of power which must be treated as wanting in due process. But the proposition disregards the fact that in the very early history of the government a progressive tax was imposed by Congress, and that such authority was exerted in some, if not all, of the various income taxes enacted prior to 1894 to which we have previously adverted. And over and above all this the contention but disregards the further fact that its absolute want of foundation in reason was plainly pointed out in Knowlton v. Moore, 178 U. S. 41, 44 L. ed. 969, 20 S. Ct. 747, and the right to urge it was necessarily foreclosed by the ruling in that case made. In this situation it is, of course, superfluous to say that arguments as to the expediency of levying such taxes, or of the economic mistake or wrong involved in their imposition, are beyond judicial cognizance. . . . In fact, comprehensively surveying all the contentions relied upon, . . . we cannot escape the conclusion that they all rest upon the mistaken theory that although there be differences between the subjects taxed, to differently tax them transcends the limit of taxation and amounts to a want of due process, and that where a tax levied is believed by one who resists its enforcement to be wanting in wisdom and to operate injustice, from that fact in the nature of things there arises a want of

due process of law and a resulting authority in the judiciary to exceed its powers and correct what is assumed to be mistaken or unwise exertions by the legislative authority of its lawful powers, even although there be no semblance of warrant in the Constitution for so doing. . . ."

In Reed v. Bjornson, 191 Minn. 254, 253 N. W. 103, — A.L.R. –, the income tax law of Minnesota was assailed on the ground, among others, that the progressive or graduated features thereof operated to deny the equal protection of the laws in contravention of the 14th Amendment; also that it contravened a provision of the constitution of Minnesota, that taxes shall be uniform upon the same class of subjects. In disposing of these contentions the Supreme Court of Minnesota said in part:

"Whether or not income is property and a tax thereon a tax on property, § 1, article 9, of our Constitution requires all taxes to be uniform on the same class of subjects, not merely on the same class of property as in some state Constitutions. Obviously incomes constitute a subject of taxation and the uniformity clause applies regardless of whether or not the tax is upon property as such. . . .

"In Lake Superior Consol. Iron Mines v. Lord, 271 U. S. 577, 581, 70 L. ed. 1093, 1101, 46 S. Ct. 627, 628, a tax case, the Supreme Court, construing our constitutional requirement of uniformity, said that 'it seems to us sufficiently plain that this provision goes no further than the Fourteenth Amendment. Consequently, if the legislation under review does not offend that amendment there is no conflict with the state Constitution. . . .'

"The Supreme Court of Oregon in Standard Lumber Co. v. Pierce, 112 Or. 314, 228 P. 812, 818, in sustaining a graduated income tax with exemptions and speaking of the Fourteenth Amendment, held that 'for all practical purposes the limitation mentioned is identical with the restrictions imposed by the Oregon Constitution,' which requires uniformity upon the same class of subjects. . . .

"We are convinced that our uniformity clause is no more restrictive than the Fourteenth Amendment. . . .

"Graduated or progressive taxation is intimately associated with that of classification, and perhaps amounts, substantially, to the same thing. . . .

"Ability to pay and extent of protection or benefit appear to the courts to be proper considerations to justify classification. . . .

"In the light of our interpretation of our uniformity clause, the weight of authority as well as of sound logic appears to justify the classification of income taxes according to amounts received. Courts appear to regard such classification as a just apportionment of burden.

"We are in accord with the Oregon court in regarding income as a proper subject for selection as a source of taxation and the graduation of the tax as a legitimate exercise of the Legislature's power to classify. It operates equally and uniformly upon all in like circumstances. We conclude that the graduated feature of our law does not invalidate it either under our Constitution or under the equal protection or due process clauses of the Fourteenth Amendment. Classification being justified, its details are for the Legislature. . . ."

It will be noted that the Constitution of Minnesota provides that taxes shall be uniform upon the same class of subjects, and the Supreme Court of that state recognized and declared that consequently the income tax was subject to the uniformity provision of the state constitution without regard to whether it be deemed a tax on property.

We are all agreed that the graduated rates prescribed by the law in question here do not constitute such arbitrary or unreasonable classification as to violate the uniformity clause of § 176 of the state constitution, or the equal protection of the law clause of the 14th Amendment, or the due process clauses of the state constitution and the 14th Amendment.

(b) Does the tax imposed on incomes by the statute in question here fall within the provisions of § 179 of the state constitution requiring assessment to be made in the county, city, township, village or district? We are agreed that it does not.

As has been noted, there is no longer any constitutional mandate fixing the situs of personal property for assessment and the provision of § 179 of the constitution requiring localized assessment applies only to certain real property.

It is argued by appellants, however, that a tax upon the income from real property is in fact, and in legal effect, a tax upon the property itself, which produced the income, and that consequently a tax upon

the income from real property is subject to the requirements of section 179 that the assessment be made within the local taxing unit. In support of this contention appellants cite and place great reliance upon the decision of the United States Supreme Court in Pollock v. Farmers' Nat. Bank, 157 U. S. 557, 39 L. ed. 810, 15 S. Ct. 673. It is true that in the opinions in that case, and in decisions by some of the state courts which cite and rely upon that case, it is stated that a tax on income from real property is in substance an annual tax on the real property which produced the income. The language in the Pollock Case, however, must be construed with reference to the subject then under consideration. The question involved in that case was whether the tax on income resulting from real and invested personal property was a direct tax and, hence, subject to the rule of apportionment prescribed by the Federal Constitution as regards direct taxation. In the original opinion in that case it was said:

"In the matter of taxation, the Constitution recognizes the two great classes of direct and indirect taxes, and lays down two rules by which their imposition must be governed, namely: The rule of apportionment as to direct taxes, and the rule of uniformity as to duties, imposts and excises. . . .

"The first question to be considered is whether a tax on the rents or income of real estate is a direct tax within the meaning of the Constitution. Ordinarily all taxes paid primarily by persons who can shift the burden upon some one else, or who are under no legal compulsion to pay them, are considered indirect taxes; but a tax upon property holders in respect of their estates, whether real or personal, or of the income yielded by such estates, and the payment of which cannot be avoided, are direct taxes."

In the opinion upon rehearing the court said: "Our previous decision was confined to the consideration of the validity of the tax on the income from real estate, and on the income from municipal bonds. The question thus limited was whether such taxation was direct or not, in the meaning of the Constitution; and the court went no farther, as to the tax on the income from real estate, than to hold that it fell within the same class as the source whence the income was derived,

that is, that a tax upon the realty and a tax upon the receipts therefrom were alike direct; . . . ."

In Brushaber v. Union P. R. Co. 240 U. S. 1, 60 L. ed: 493, 36 S. Ct. 236, L.R.A.1917D, 474, Ann. Cas. 1917B, 713, supra, the Supreme Court of the United States said: "The conclusion reached in the Pollock Case did not in any degree involve holding that income taxes generically and necessarily came within the class of direct taxes on property, but, on the contrary, recognized the fact that taxation on income was in its nature an excise entitled to be enforced as such unless and until it was concluded that to enforce it would amount to accomplishing the result which the requirement as to apportionment of direct taxation was adopted to prevent, in which case the duty would arise to disregard form and consider substance alone, and hence subject the tax to the regulation as to apportionment which otherwise as an excise would not apply to it."

In other cases the Supreme Court of the United States has drawn fundamental distinctions between the taxation of tangible property and the taxation of income received from such property. Thus on the one hand the rule has been announced repeatedly that it is beyond the power of a state to tax at the place of the domicile of the owner, tangible property, either real or personal, located beyond the borders of the state. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 50 L. ed. 150, 26 S. Ct. 36, 4 Ann. Cas. 493; Frick v. Pennsylvania, 268 U. S. 473, 69 L. ed. 1058, 45 S. Ct. 603, 42 A.L.R. 316. On the other hand it has been held that a state has power to tax income earned outside the state by one domiciled within the state and that such taxation does not infringe the 14th Amendment. McGuire v. Trefry, 253 U. S. 12, 64 L. ed. 739, 40 S. Ct. 417; Lawrence v. State Tax Commission, 286 U. S. 276, 76 L. ed. 1102, 52 S. Ct. 556, 87 A.L.R. 374.

In Lawrence v. State Tax Commission, supra, the court said:

"The obligation of one domiciled within a state to pay taxes there, arises from the unilateral action of the state government in the exercise of the most plenary of sovereign powers, that to raise revenue to defray the expenses of government and to distribute its burdens equably among those who enjoy its benefits. Hence, domicile in itself estab-

lishes a basis for taxation. Enjoyment of the privileges of residence within the state, and the attendant right to invoke the protection of its laws, are inseparable from the responsibility for sharing the costs of government. (Citation of authorities.) The Federal Constitution imposes on the states no particular modes of taxation, and apart from the specific grant to the Federal government of the exclusive power to levy certain limited classes of taxes and to regulate interstate and foreign commerce, it leaves the states unrestricted in their power to tax those domiciled within them, so long as the tax imposed is upon property within the state or on privileges enjoyed there, and is not so palpably arbitrary or unreasonable as to infringe the 14th Amendment. . . .

"The present tax has been defined by the Supreme Court of Mississippi as an excise and not a property tax, Hattiesburg Grocery Co. v. Robertson, 126 Miss. 34, 88 So. 4, 25 A.L.R. 748; State ex. rel. Knox v. Gulf, M. & N. R. Co. 138 Miss. 70, 104 So. 689, but in passing on its constitutionality we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it. . . .

"It is enough, so far as the constitutional power of the state to levy it is concerned, that the tax is imposed by Mississippi on its own citizens with reference to the receipt and enjoyment of income derived from the conduct of business, regardless of the place where it is carried on. The tax, which is apportioned to the ability of the taxpayer to bear it, is founded upon the protection afforded to the recipient of the income by the state, in his person, in his right to receive the income, and in his enjoyment of it when received. These are rights and privileges incident to his domicile in the state and to them the economic interest realized by the receipt of income or represented by the power to control it, bears a direct legal relationship. It would be anomalous to say that although Mississippi may tax the obligation to pay appellant for his services rendered in Tennessee, (citation of authorities) still, it could not tax the receipt of income upon payment of that same obligation. We can find no basis for holding that taxation of the income at the domicile of the recipient is either within the purview of the rule now established that tangibles located outside the state of the

owner are not subject to taxation within it, or is in any respect so arbitrary or unreasonable as to place it outside the constitutional power of taxation reserved to the state. . . .

"The equal protection clause does not require the state to maintain a rigid .rule of equal taxation, to resort to close distinctions, or to maintain a precise scientific uniformity; and possible differences in tax burdens not shown to be substantial or which are based on discriminations not shown to be arbitrary or capricious, do not fall within constitutional prohibitions."

That a tax on income from tangible property is actually a tax on a different taxable subject than the property which produced the income, has been recognized also by the state courts that have said that "a tax upon the income of property is in reality a tax upon the property itself." Thus, one of the authorities on which appellants place especial reliance is the decision of the Supreme Judicial Court of Massachusetts in Opinion of Justices, 220 Mass. 613, 108 N. E. 570, wherein the court said: "A tax upon the income of property is in reality a tax upon the property itself . . . . In its essence a tax upon income derived from property is a tax upon the property. This was decided after most elaborate consideration, with affluent citation of authorities, in Pollock v. Farmers' Loan & T. Co. 157 U. S. 429, 581, 39 L. ed. 759, 819, 15 S. Ct. 673." But in Codman v. American Piano Co. 229 Mass. 285, 118 N. E. 344, and Stony Brook R. Corp. v. Boston & M. R. Co. 260 Mass. 379, 157 N. E. 607, 53 A.L.R. 700, the question arose whether an agreement by the lessee to pay taxes assessed on the property obligated the lessee to pay taxes upon the income which the lessor received under the terms of the lease. The lease in question in Codman v. American Piano Co. supra, provided that "the lessee further covenants and agrees with the lessor to pay . . . all taxes and assessments whatsoever which may be payable for or in respect of the leased premises during the term hereof." It was contended by the lessor that, under the rule announced by the Supreme Court of the United States in the Pollock Case and the former decisions in Massachusetts, the tax on the income from real property was in reality a tax on the property and that, consequently, the lessee was obligated to pay

it. The Massachusetts court held that the clause in the lease did not cover income taxes. In the decision in that case the court said:

"The decision in the Pollock Case that a tax on rents of real estate is a direct tax, and that therefore the federal income law which provided for a tax upon such rents was unconstitutional, related only to the constitutional power of Congress to tax incomes. The court did not consider or decide that a tax on rent was a tax for or in respect to the premises from which the rent was derived. That is a wholly different question. . . .

"When rent from land has become due, it is personal property; it is a chose in action and does not pass by a conveyance of the land. . . .

"So rent from real estate which has accrued is held to be taxable at the domicile of the lessor; Old Dominion S. S. Co. v. Virginia, 198 U. S. 299, 49 L. ed. 1059, 25 S. Ct. 686, 3 Ann. Cas. 1100, while the real estate from which rent is derived is taxable at its situs. Union Transit Co. v. Kentucky, 199 U. S. 194, 50 L. ed. 150, 26 S. Ct. 36, 4 Ann. Cas. 493."

The lease involved in Stony Brook R. Corp. v. Boston & M. R. Co. 260 Mass. 379, 157 N. E. 607, 53 A.L.R. 700, supra, contained this clause respecting the payment of taxes:

"Said second party (the lessee) further agrees that it will pay all public taxes, assessments and charges whatsoever on the property, franchise or capital stock of said first party (the lessor) that shall be placed or assessed upon said first party or upon its stockholders residing in Massachusetts."

The Massachusetts court held that the clause in the lease did not obligate the lessee to pay the income tax imposed upon the lessor on account of the rent received by him under the lease. In the course of its opinion in that case the Supreme Judicial Court of Massachusetts pointed out quite clearly the distinction between a tax on income and a tax on the property which produced the income. The court said:

"A tax on the 'property' of a railroad corporation in its common acceptation as used in these circumstances would be thought to mean physical or tangible assets. . . .

"Doubtless income when received is property. But a tax on the income of a corporation is not imposed directly on its property but against

the gain or revenue derived from its property. Income is something derived from property, labor, skill, ingenuity or sound judgment, or from two or more in combination. It is not commonly thought of as property but as gain derived from property, or some other productive source. The natural signification of the agreement to pay 'taxes . . . on the property' of the plaintiff is to pay taxes levied because of ownership and not those levied on the receipt of rental. . . . The distinction between taxes on property and taxes on income is well established. The tax on the rental received from property is not the same as a tax on the property itself.

"An assessment upon income is an assessment upon a subject different from a tax upon property. The words used in the present lease and the connection in which they occur bear no implication that the lessee agreed to pay a tax assessed to the plaintiff on the rent it might receive under the lease. In the common acceptance of words, a tax upon income has come to mean something different from a tax on property."

Substantially similar questions were considered and similar views expressed concerning them by the Supreme Court of Illinois in Young v. Illinois Athletic Club, 310 Ill. 75, 141 N. E. 369, 30 A.L.R. 985, and by the Supreme Court of Iowa in Des Moines Union R. Co. v. Chicago G. W. R. Co. 188 Iowa, 1019, 177 N. W. 90, 9 A.L.R. 1557.

The tax imposed by the income tax law of this state is not limited to income from real property. It is imposed upon all income without regard to the source thereof. We are agreed that, insofar as the income in any given case may result wholly or in part from rent or income from real property, a tax on such income is not a tax upon the property which produced the income. It is a tax upon a wholly different subject. It is a tax upon something which the owner of the property that produced the income has received in addition to the property which produced the income. The income tax is a charge against the taxpayer and is not a charge upon any specific property. Section 179 of the constitution applies only to taxes levied upon real property as such and has no application to taxes that are levied upon income resulting in whole or in part from real property.

The contentions advanced by the appellants, that the law is arbitrary,

capricious and confiscatory, is disposed of by what has been said above. In their last analysis the several contentions resolve themselves to criticism of the wisdom and fairness of the legislation and the correctness of the judgment exercised by the legislature in the enactment of the law. In no instance do the alleged discriminations infringe upon the constitutional provisions invoked by appellants. The power to remedy the conditions of which appellants complain is vested in the law-making power. It is not vested in the courts.

It follows from what has been said that the state income tax act does not contravene §§ 13, 176 and 179 of the state constitution or the due process and equal protection of law clauses of the 14th Amendment to the Constitution of the United States. The order appealed from is correct. It must be and is affirmed.

BURKE, Ch. J., and BURR, J., concur.

MORRIS, J. (Specially concurring.) I concur in the result and the principles of law set out in the syllabus. Income as a tax subject is sui generis. The income tax considered in this case is not a property tax and hence does not come within the uniformity provisions of § 176 or the situs provision of § 179 of the North Dakota Constitution.

NUESSLE, J. (Specially concurring.) I concur in the statement of principles as set forth in the syllabus, and in the result reached in the foregoing opinion. My concurrence is predicated on the proposition that income as a subject of taxation is not property within the meaning of that term as used in § 176 of the Constitution. See, Re Lipschitz, 14 N. D. 622, 628, 95 N. W. 160.