**SOURIS RIVER TELEPHONE MUTUAL AID CORPORATION, Plaintiff and Appellant,**

**v.**

**STATE of North Dakota et al., Defendants and Respondents.**

**Civ. 8488.**

Supreme Court of North Dakota.

Nov. 14, 1968.

Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy, Minot, for plaintiff and appellant.

Joseph R. Maichel, Asst. Atty. Gen., Bismarck, for respondents State of North Dakota, North Dakota Atty. Gen., and North Dakota State Tax Commissioner.

A. S. Benson, State's Atty., Bottineau, for respondents Bottineau County and Bottineau County Treasurer.

Joseph C. McIntee, State's Atty., Towner, for respondents McHenry County and McHenry County Treasurer.

John Romanick, State's Atty., Washburn, for respondents McLean County and McLean County Treasurer.

Q. R. Schulte, State's Atty., Stanley, for respondents Mountrail County and Mountrail County Treasurer.

Conrad J. Ziegler, State's Atty., Rugby, for respondents Pierce County and Pierce County Treasurer.

Erwin H. Brendel, State's Atty., Mohall, for respondents Renville County and Renville County Treasurer.

John B. Hart, State's Atty., Rolla, for respondents Rolette County and Rolette County Treasurer.

Douglas P. Roberts, State's Atty., McClusky, for respondents Sheridan County and Sheridan County Treasurer.

Richard B. Thomas, State's Atty., Minot, for respondents Ward County and Ward County Treasurer.

Vincent A. LaQua, Fessenden, for respondents Wells County and Wells County Treasurer.

PAULSON, Judge.

The Souris River Telephone Mutual Aid Corporation, one of 396 mutual or cooperative telephone companies which are taxed pursuant to the provisions of Chapter 57–34 of the North Dakota Century Code, and acts amendatory thereto, commenced an action for a declaratory judgment against 10 counties to which it had paid such taxes. Souris challenged the constitutionality of such chapter, and particularly Section 57–34–03, N.D.C.C., as amended by Section 3, Chapter 401, Session Laws of North Dakota 1965. The Attorney General and the State Tax Commissioner, designated to administer this law, were joined as additional parties defendant.

Souris, at the time of the payment of the 1966 taxes, filed a written protest and request for abatement as required by Section 57–20–20, N.D.C.C., and commenced its action for refund within the 6-month period prescribed by Section 57–08–03, N.D.C.C. The Counties, the Attorney General, and the State Tax Commissioner have not challenged the nature of the action commenced by Souris, pursuant to the provisions of Chapter 32–23, N.D.C.C., which is the declaratory judgments law.

Souris moved for summary judgment after answers and requests for admissions were received from the respective Counties, as well as from the Tax Commissioner. The Counties, the Attorney General, and the State Tax Commissioner, at the

time of the hearing on the motion for summary judgment initiated by Souris, also moved for summary judgment. All parties conceded that there is no genuine issue as to any material facts to be determined in this action and Souris, as well as the Counties, sought to have the trial court enter a summary judgment under Rule 56 of the North Dakota Rules of Civil Procedure. The admissions were to the effect:

1. That Souris had paid the taxes assessed pursuant to Chapter 57–34, N.D.C.C., as amended by Chapter 401, Session Laws N.D.1965;

2. That Souris, claiming the taxes were unconstitutional, paid the taxes under protest;

3. That Souris applied for a refund and abatement of the tax moneys paid; and

4. That the county commissioners in each of the respective Counties had all refused Souris' application for an abatement and refund.

In addition thereto, Souris secured from the State Tax Commissioner an admission with reference to the materials set forth in the "summary of telephone companies taxed". The trial court, in view of the admissions which were elicited from the Counties and the State Tax Commissioner, determined that there were no material facts in dispute and, accordingly, the court was empowered to enter a summary judgment under Rule 56, N.D.R.Civ.P.

The trial court granted summary judgment in favor of the Counties and the State Tax Commissioner, and dismissed the action against all of the Counties, the Attorney General, and the State Tax Commissioner. Souris has appealed from the summary judgment. We are immediately confronted with the question whether it was error for the trial court to enter the summary judgment against Souris. In reviewing the record we find that there were no genuine material issues of fact and an order for summary judgment was proper.

3 Barron & Holtzoff, Federal Practice and Procedure, § 1239, pp. 176–180.

However, before considering the specific issues raised by Souris, it is proper to consider the rules which must be applied in deciding the questions in this case. The particular provisions of Chapter 57–34, N.D.C.C., as amended by Section 3, Chapter 401, Session Laws N.D.1965, read:

"57–34–03. Computation of taxes by tax commissioner.—On or before August first of each year, the tax commissioner shall compute the total tax to be assessed against each telephone company in this state in the following manner:

"1. Telephone companies maintaining an average of one and twenty-five hundredths telephone stations or less per mile of telephone line operated in this state shall be taxed at the rate of one-half of one percent of their telephone operating receipts;

"2. Telephone companies maintaining an average of not less than one and twenty-six hundredths and not more than one and seventy-five hundredths telephone stations per mile of telephone line operated in this state shall be taxed at the rate of one percent of their operating receipts;

"3. Telephone companies maintaining an average of not less than one and seventy-six hundredths and not more than two and twenty-five hundredths telephone stations per mile of telephone line operated in this state shall be taxed at the rate of one and one-half of one percent of their operating receipts.

"4. Telephone companies maintaining an average of more than two and twenty-five hundredths stations per mile of telephone line operated in this state shall be taxed at the rate of two percent of their operating receipts.

"Notwithstanding the provisions of subsections 1 through 4 of this section, if the tax due from any telephone company

taxed under the provisions of this chapter shall be less than fifty cents per station maintained in this state, such company shall be subject to a tax of fifty cents per station."

Three hundred and seventy-five of the 396 telephone companies subject to this tax were of such insufficient density as to be taxed at not less than 50¢ per station; 21 companies, including Souris, were of sufficient density to be taxed according to the graduated percentages of subsections 1 through 4 of Section 57–34–03, N.D.C.C. (§ 3, ch. 401, S.L.N.D.1965). Souris' total tax liability was $40,495.00 after the computation of the "density" and the application of the rate of tax. Souris has asked for a refund of any moneys paid in excess of the minimum tax of 50¢ per telephone station, or $34,862.56.

An enactment of the Legislature is presumed to be constitutional and such presumption is conclusive unless it is clearly shown that the act is in contravention of the State or the Federal Constitution. Where the act is regularly passed by the Legislative Assembly, the only test concerning the validity of the act is whether it violates either the State or the Federal Constitution. State ex rel. Haggart v. Nichols, 66 N.D. 355, 265 N.W. 859 (1936); States ex rel. Linde v. Taylor, 33 N.D. 76, 156 N.W. 561, L.R.A.1918B, 156 (1916); O'Laughlin v. Carlson, 30 N.D. 213, 152 N.W. 675 (1915).

Souris asserts three major contentions in its appeal to this court:

1. That the tax imposed by Chapter 57–34, N.D.C.C., is a property tax and therefore unconstitutional because:

   a. It is a tax on the gross income of a particular kind of property;

   b. It is a tax in lieu of property taxes; and

   c. Telephones and number of telephones are the operative factors in determining the tax amounts.

2. The property tax imposed by Chapter 57–34, N.D.C.C., is invalid because it is not uniform.

3. The graduated tax imposed by Chapter 57–34, N.D.C.C., violates the equal protection clause of the Fourteenth Amendment to the United States Constitution.

It is not contended by Souris that the Legislature of the State does not have the power to enact tax laws, to prescribe the rules of taxation, and to regulate and give effect to those rules.

The State, in opposition to the contentions of Souris, asserts:

1. The tax imposed by Chapter 57–34 is an excise tax and, hence, does not violate § 176 of the North Dakota Constitution or the equal protection clause of the Fourteenth Amendment to the United States Constitution; and

2. Even if the tax imposed is a property tax, the classification does not violate § 176 of the North Dakota Constitution or the Fourteenth Amendment to the United States Constitution.

The exhaustive research by respective counsel for Souris and the State concerning whether the tax in question is a property tax or an excise tax is scholarly and deserving of commendation. However, the court does not believe it is necessary to define the tax as an excise tax or a property tax in resolving this case.

The 1914 amendment to § 176 of the North Dakota Constitution changed the State's method of taxation from one of uniform rule upon property according to its true value to one of legislative discretion to classify subjects, including property and persons, for tax purposes. This legislative authority is subject only to the limitation precluding arbitrary classification as prohibited by the Fourteenth Amendment to the United States Constitution. State

ex rel. City of Fargo v. Wetz, 40 N.D. 299, 168 N.W. 835, 5 A.L.R. 731 (1918). It is apparent that under the rules enunciated in State ex rel. City of Fargo v. Wetz, supra, the Constitution of this State confers upon the Legislature the widest discretion in classifying property for purposes of taxation that might be conferred upon it. Later, this court, in construing a 1935 State income tax law, in State ex rel. Haggart v. Nichols, 66 N.D. 355, at page 363, 265 N.W. 859, at page 863 (1936), said:

" 'The view which we take of the matter renders it unnecessary to consider whether or not the law under discussion imposed' an excise tax or a property tax (Cream of Wheat Co. v. Grand Forks County, 253 U.S. 325, 328, 40 S.Ct. 558, 64 L.Ed. 931, 933), for the members of the court are all agreed that under * * [§ 176] of the state constitution the legislature has wide discretionary powers to classify property for the purposes of taxation, and that the standard of uniformity under section 176 of the state constitution is substantially the same as the standard of equality under the 14th Amendment to the constitution of the nation. The pivotal question as to the validity of the tax therefore becomes one as to the power of the legislature to provide for the imposition thereof under the conditions prescribed in the act rather than the particular name to be attributed to it. Grand Forks County v. Cream of Wheat Company, 41 N.D. 330, 340, 170 N.W. 863; State ex rel. City of Fargo v. Wetz, 40 N.D. 299, 318, 168 N.W. 835, 5 A.L.R. 731; Wagner v. City of Covington, 251 U.S. 95, 102, 40 S.Ct. 93, 94, 64 L.Ed. 157, 167.''

We adhere to the holding as enunciated in the above case.

Souris strenuously urges that the classifications made by the Legislature are unreasonable, asserting that the classification is of persons for property tax purposes and this personal basis of classification is the relative affluence of the several owners of the larger telephone companies. The State counters with the argument that the purpose of the classification is to categorize the companies on a basis of productivity; in other words, that the telephone stations in an area in a high degree of density are more profitable and more productive than those in a lower degree of density. The State further asserts that the relationship of density and productivity is a factor which was and had been considered in the enactment of Chapter 57–34, N.D.C.C.

■ The issue, then, is the reasonableness of the classification of companies based upon the differences in the density of each company's operation and its relationship to productivity and ability to pay a graduated tax. For an excellent discussion of the rules governing the reasonableness of classification for taxation purposes, see 1 Cooley, Taxation (4th Ed.) §§ 334–337. Succinctly stated, any classification must be reasonable and the subjects can be segregated into classes only by differences in the subjects which afford a ground for different treatment with reference to taxation. A basis for classification must be such as naturally inheres in the subject matter. 5 Am.Jur., Taxation §§ 175, 177, pp. 234–238. State v. Gamble Skogmo, Inc., 144 N.W.2d 749 (N.D.1966). While the *Gamble Skogmo* case involved the Sunday-closing law in North Dakota and not a question of taxation, the Fourteenth Amendment requirements in that case are equally applicable in the instant case.

"3. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." [¶ 3 of syllabus, 144 N.W.2d at 752.]

"5. Only invidious discrimination is prohibited by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." [¶ 5 of syllabus, 144 N.W.2d at 752.]

The North Dakota Legislature's classifying intent is evidenced by that portion of the report of the North Dakota Legislative Research Committee's Subcommittee on

Taxation to the 1965 Legislative Assembly, at pages 127–128, which reads as follows:

"Data comparing the tax revenues payable by rural telephone companies under the proposed plan with that presently payable and that which would be payable under the ad valorem system, was prepared by Dr. William Koenker of the University of North Dakota. This data indicates that the increase in taxes for rural telephone companies would be substantial for one telephone company, which would be the only company subject to the two percent rate. The size, operating revenues, property valuation, and number of telephone stations maintained by this company are quite large in comparison to the average rural telephone station. In comparing the taxes that would be payable under an ad valorem tax system with taxes payable under the tax plan proposed, it will be noticed that the proposed plan provides lower rates than would the ad valorem property tax. However, some of the rural telephone companies have such marginal operations that the imposition of real and personal property taxes might force their telephone rates beyond the point of diminishing returns and seriously impair their solvency. Other companies could afford to pay normal real and personal property taxes, but it is not feasible to adopt two or three different taxing systems for these companies. Despite variations between rural telephone companies there appears to be a definite correlation between telephone station density and taxpaying ability. Consequently a tax plan with rates based on this factor can readily apply to both the marginal and more affluent companies. The tax plan presented by the Rural Telephone Association seems quite appropriate to the Committee."

This report shows that the Legislative Assembly believed that there were such economic differences between mutual or cooperative telephone companies, together with sufficient public policy reasons for protecting marginal mutual or cooperative telephone operations, that the categories devised attained the desired equality between the ability to pay and the extent of protection or benefit received by each company. As stated in 1 Cooley, Taxation (4th Ed.) § 334, pp. 715–716:

"In taxation 'there is a broader power of classification than in some other exercises of legislation.'"

This court believes the classifications prescribed in Chapter 57–34, N.D.C.C., are based upon reasonable, substantial differences resulting from density of operation, productivity or profits, and public policy.

In support of its contention that the graduated tax rate set forth in Chapter 57–34 is invalid under the equal protection clause of the Federal Constitution, Souris cites Stewart Dry Goods Co. v. Lewis, 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054 (1935), which was followed in National Tea Co. v. State, 205 Minn. 443, 286 N.W. 360 (1939), and Ed. Schuster & Co., Inc. v. Henry, 218 Wis. 506, 261 N.W. 20 (1935). *Stewart Dry Goods* involved the constitutionality of a Kentucky statute which provided for a graduated sales tax upon all Kentucky merchants. The Stewart Dry Goods Company asserted that the classification of sales for the purpose of the tax was arbitrary and violated the equal protection clause of the Fourteenth Amendment to the United States Constitution. The State urged that the statute was constitutional because the graduation of the tax was adjusted with reasonable approximation to the net earnings of the taxpayers, and was based upon a claimed relation between the gross sales and the net profits. The United States Supreme Court held the statute unconstitutional for the reason that the State failed to prove that the graduation of the tax was adjusted with reasonable approximation to the net earnings of the taxpayers. In the instant case, a review of the record reveals adequate proof of the relationship between density (the measure of the tax) and profits and productivity (the objects sought to be taxed).

Souris also refers to various statistics in support of its contention that the taxes assessed against the companies, pursuant to Chapter 57–34, are assessed unequally. Souris paid 50.48 percent of the taxes levied and assessed in 1966, while owning and operating only 23.18 percent of the telephones. In each of the 10 Counties in which it operated, Souris paid a greater percentage of telephone taxes to the county than its percentage of all telephones taxed in the county. Souris owned 67.17 percent of the telephones taxed in all 10 Counties in which it operated, but paid 91.31 percent of all the telephone taxes distributed to these counties under Chapter 57–34, N.D. C.C.

 The equality required by the United States Constitution does not mean equality in dollars and cents. Practical equality is constitutional equality. There is no imperative requirement that taxation shall be absolutely equal. In the instant case, it is clear that the rate of taxation assessed against Souris is the rate set forth in Chapter 57–34, N.D.C.C.

The comprehensive appendices contained in the record indicate that the other mutual or cooperative telephone companies are taxed at the prescribed rates of taxation required by the categories into which they fall because of the density of their operations. The power to classify includes the power to subclassify. 1 Cooley, Taxation (4th Ed.) § 333, p. 711. The fact that the majority of the telephone companies taxed under this chapter pay only the minimum prescribed tax is not determinative of the constitutional requirements applied to Souris. Uniformity on the same class of subjects requires that all similarly situated shall be treated alike. 1 Cooley, Taxation (4th Ed.) §§ 253, 340. Since each mutual or cooperative telephone company similarly situated in a subclass by virtue of density of its operation is taxed in the same manner and at the same rate as all other companies in the same classification are taxed, the equality and uniformity argument of Souris has no merit.

While Souris is the only company taxed at the maximum allowable rate, the statute obviously leaves the classes open so that any expanding company which becomes sufficiently dense in its operation would be taxed at the same rate as Souris. Thus the classification is not invalid because it affects one person or corporation alone where it is broad enough to apply to others if they exist. 1 Cooley, Taxation (4th Ed.) § 335.

For reasons stated in the opinion we conclude that the provisions of Chapter 57–34, N.D.C.C., as amended by Chapter 401, Session Laws N.D.1965, are in no way violative of the State or the Federal Constitution, and the summary judgment is hereby affirmed.

TEIGEN, C. J., and ERICKSTAD, STRUTZ and KNUDSON, JJ., concur.