Theodore MESSNER and Margaret Messner, Petitioners and Appellants,

v.

Byron L. DORGAN, Tax Commissioner for the State of North Dakota, Respondent and Appellee.

Civ. No. 9020.

Supreme Court of North Dakota.

Dec. 31, 1974.

Rehearing Denied Jan. 31, 1975.
Certiorari Denied April 28, 1975.
See 95 S.Ct. 1681.

L. A. W. Stephan, Valley City, for petitioners and appellants.

Albert R. Hausauer and Robert W. Wirtz, Sp. Asst. Attys. Gen., State Tax Dept., Bismarck, for respondent and appellee.

VOGEL, Judge.

The appellants, Theodore and Margaret Messner, are husband and wife. Since their marriage in 1935, they have purchased 800 acres of farmland. The land is held in joint tenancy and was farmed by them during the year 1970.

In 1971, they filed a joint Federal income tax return for the 1970 tax year. In the return they listed net farm income of slightly more than $12,000 and income from interest on joint savings investments of slightly more than $1,000. For the same year they filed separate State income tax returns, dividing the income shown on the Federal return between them.

As part of their Federal tax return the Messners filed a self-employment tax return in which the gross income from the

farm was shown, for self-employment tax purposes, as the income of Theodore Messner. The Tax Commissioner contends that the Messners are prohibited, by statute and Tax Commissioner's Rule 50–4–b, from filing separate returns splitting income which has been allocated to one of them on a self-employment tax return. The Messners contend that Tax Commissioner's Rule 50–4–b is not authorized by statute and is invalid.

The State Tax Commissioner assessed additional State income taxes for the year 1970 against the Messners, and they appealed to the district court of Burleigh County, which, after remanding the case once to the Tax Commissioner for the taking of further evidence, affirmed the decision of the State Tax Commissioner. This appeal followed.

The dispute between the parties arises over the interpretation of Section 57–38–31, subsection 2, N.D.C.C., and the validity and application of Rule 50–4–b promulgated by the Tax Commissioner. Relevant portions of the statute and the rule follow:

"57–38–31. Duty of individuals and fiduciaries to make return.—1. Every resident individual, every fiduciary for a resident individual, estate or trust, and every individual or fiduciary who receives income derived from sources in this state, who is required by the provisions of the United States Internal Revenue Code of 1954, as amended, to file a federal income tax return, shall file an income tax return with the state tax commissioner in such form as he may prescribe. . . . The return shall be signed by the person required to make it and shall contain a written declaration that it is made and subscribed under penalties of perjury.

"2. A husband and wife each having separate income may include their income in a single joint return, or if they have separate income from personal or professional services or from business or property in which the other has no ownership and if they file a joint federal income tax return in which such income is reported, they may file separate returns in which the separate income of each and the deductions and exemptions for themselves or their dependents are reported in the same way that they would have been required to report them in separate federal returns if they had filed separate federal returns.

"A husband and wife who have income from property or business in which both have an ownership interest may file a single joint return in which the income of both, along with any other income they may be required to report, is included, or they may file separate returns in the same way as provided in the preceding paragraph, provided that the income from the property or business in which both have an ownership interest shall be allocated between them according to the capital interest of each, the management and control exercised by each, and the services performed by each with respect to such property or business, pursuant to rules and regulations promulgated by the tax commissioner for the reasonable allocation thereof.

.        .        .        .        .

"INCOME TAX RULE NO. 50/RE-PORTING OF INCOME BY HUSBAND AND WIFE

.        .        .        .

"4. Income from a business in which both husband and wife have an ownership interest.

.        .        .        .

"b. Allocation of income derived from a business other than a partnership in which both a husband and wife claim an ownership interest

"In the case of a business owned by a husband and wife who filed a joint federal income tax return in which one of them claimed all of the income therefrom for federal self-employment tax purposes, it will be presumed for purposes of administering the state income tax law, unless expressly shown to the contrary by

the taxpayer, that the spouse who claimed that income for federal self-employment tax purposes did, thereby, with the consent of the other spouse, claim all right to such income and that therefore such income must be included in the state income tax return of the spouse who claimed it for federal self-employment tax purposes if the husband and wife file separate state income tax returns.

.        .        .        .        .

"d.  Management and control

"Participation in the control and management of a business must be distinguished from the regular performance of nonmanagerial services.  Contribution of management and control with respect to the business must be of a substantial nature in order to accord it weight in making an allocation of income.  Substantial participation in management does not necessarily involve continuous or even frequent presence at the place of business, but it does involve genuine consultation with respect to at least major business decisions; and it presupposes substantial acquaintance with an interest in the operations, problems, and policies of the business, along with sufficient maturity and background of education or experience to indicate an ability to grasp business problems that is appreciably commensurate with the demands of the enterprise concerned.  Vague or general statements as to family discussions at home or elsewhere will not be accepted as a sufficient showing of actual consultation, but evidence of genuine consultation with respect to specific matters is entitled

to consideration even though it has taken place in the home.  Evidence of genuine consultation with respect to the distribution of profits or the retention in the business is significant and to be accorded weight in determining proper allocation of income.

"e.  Services performed

"The amount of services performed by each spouse is a factor to be considered in determining proper allocation of income from a business in which each spouse has an ownership interest.  In order to accord weight to services performed by an individual spouse, the services must be of a beneficial nature in that they make a direct contribution to the business.  For example, for a business operation, whether it is a retail sales enterprise, farming operation or otherwise, in which both husband and wife have an ownership interest, the services contributed by the wife must be directly connected with the business operation; services for the family such as planting and maintaining family gardens, domestic housework, cooking family meals, and routine errands and shopping, are not considered to be services performed or rendered as an incident of or a contribution to the particular business; such activities by a wife must be disregarded in determining the allocable income attributable to the wife."

The Messners obviously were aware of the provisions of Rule 50–4–b, because attached to each of the separate individual State tax returns was the following statement:

STATEMENT OF HUSBAND AND WIFE RELATIVE TO INCOME

FROM FARM LAND HELD IN JOINT TENANCY

OWNERSHIP

Taxpayers, husband and wife, have filed a joint federal income tax return for 1970 listing joint income from land held in joint tenancy

ownership. Under federal regulations (See below *) husband was required to pay self-employment tax on *all* earnings from farm. Wife was not permitted to claim part for self-employment tax purposes. This was not optional on the part of either.

This statement is made to set forth clearly that taxpayers on their separate state income tax returns each claims his share of income from jointly owned land, that neither has given any consent of any kind to husband's including such income in the federal tax return for self-employment purposes, and that such was done because it was mandatory under federal laws and regulations.

Dated 3/26/71

[Signed] THEODORE MESSNER.

[Signed] MARGARET MESSNER

*Farmer's Tax Guide—1971 Edition:* "Your wife is not considered 'self-employed' with respect to your earnings from self-employment, even though you file a joint income tax return . . . mere ownership, or joint ownership, of farm property does not qualify a spouse for self-employment purposes."

---

The Messners' quotation from the Farmer's Tax Guide is perhaps a little misleading. The full paragraph from which the excerpt is taken reads as follows:

"Your wife is not considered 'self-employed' with respect to your earnings from self-employment, even though you file a joint income tax return. If your wife is operating her own business, whether farming or anything else, she is a self-employed person and a separate self-employment tax for her may be due. If so, her self-employment tax should be computed on a separate self-employment tax schedule and reported with yours on line 56 of the joint income tax return, Form 1040. Mere ownership, or joint ownership, of farm property does not qualify a spouse for self-employment tax purposes."

In denying the claim of the Messners that they were entitled to split their income, as permitted by Section 57–38–31, *supra*, the Tax Commissioner mailed to appellants a notice of determination of assessment of additional taxes which contained the following remarks:

"Splitting of income disallowed. See attached schedule of corrected liability. The fact that land is held in joint tenancy does not qualify a husband and wife to file separate returns, splitting income from a farming operation in half. See enclosed copy of income tax Rule No. 50–Section 4, paragraphs A, B, C, D, & E."

Before going further into the history of the litigation, we can comment at this point on two of the conflicting contentions of the parties.

■ On the one hand, we cannot agree with the Messners that the allocation of all the income of both spouses to the husband, so far as the self-employment tax was con-

cerned, was "not optional" or "was mandatory under federal laws and regulations." Their claim is based upon language in the "Farmer's Tax Guide," an official publication of the Internal Revenue Service, quoted above. That publication merely says that the wife is not considered self-employed as to the husband's earnings, and that "mere . . . joint ownership" of farm property does not qualify a spouse for self-employment tax purposes. In the absence of authoritative construction by Federal administrative agencies or courts, we read this language as covering only such instances as (1) where the husband earns all the money, as by farm labor or crop shares, or (2) where attribution of income to the wife is based solely upon co-ownership, without any labor on her part. The publication provides no guidance at all in cases such as the present one, where the husband and wife not only own the property together but work together to make it produce income. We assume that they could have divided the income for Federal self-employment tax purposes and provided the Federal Internal Revenue Service with proof of joint management and labor to produce the income and thereby justified the division for self-employment tax purposes. Of course, this would have required the payment of more self-employment taxes.

■ On the other hand, we cannot agree with the Tax Commissioner that the Messners did not comply with Rule 50–4–b. That rule creates a presumption that "the spouse who claimed . . . income for federal self-employment tax purposes, did, thereby, with the consent of the other spouse, claim all right to such income . . . ." This presumption is to be given effect "unless expressly shown to the contrary by the taxpayer." The taxpayer showed to the contrary, in the most express way possible, by submitting a statement signed by both husband and wife saying that no such consent was given and no such claim was made. This statement was filed along with, and at the same time as, the filing of the returns upon which the Com-

missioner relies to establish the presumption. The Commissioner appears to construe Rule 50–4–b as creating a presumption that the husband earned all the money. Such a presumption, as the trial court noted, would be subject to attack on constitutional grounds. But the rule, by its terms, only creates a presumption that one spouse consented to the claim of right to such income by the other spouse. We hold that this presumption was overcome.

The question remaining before us is whether the evidence submitted by the parties, without the benefit of the presumption—which was negatived by the statement of the Messners—supports the imposition of the additional tax.

In resolving this question we find that the record is not as helpful as it might be. In fact, much of the record indicates that the evidence of the Messners as to their joint participation in the earning of the income was disregarded during most of the proceedings below.

The hearing on the protest of the Messners was held before an examiner of the Tax Department. He ruled that a husband and wife who file a joint Federal tax return allocating income to the husband for self-employment tax coverage "cannot thereafter claim this same income to be other than the husband's when filing state income tax returns." He thereby ignored the language of the statute, Section 57–38–31, subsection 2, N.D.C.C., which permits a husband and wife to file separate State returns with income "allocated between them according to the capital interest of each, the management and control exercised by each, and the services performed by each . . . ." Such evidence was extensive and tended to support the Messners' claim of an equal division of income. It showed that they were very poor when they married, that they worked together in acquiring some property, that the wife not only cooked and did the household work but assisted in the harvests, that she milked the cows, that she kept most of the farm and household records, and that she participated in the

making of decisions as to purchase of machinery. The Tax Commissioner offered no evidence to contradict the testimony of the Messners on this matter.

When this case reached the district court the first time, Judge Thompson, after an extended analysis of the law and facts, came to many of the conclusions we have reached above. He held that the Messners were not compelled by Federal regulations to file a self-employment tax return in the name of the husband alone, that Rule 50 did not (and could not constitutionally) create an absolute bar to the filing of separate State tax returns by husband and wife even though one or the other had filed a self-employment tax return on the same income, and that the State Tax Commissioner should be required to consider the evidence as to the management, control, and services of the Messners. He remanded the case to the Tax Commissioner for the taking of additional evidence and the making of new findings.

The Tax Commissioner then offered the Messners an opportunity to present additional evidence. They declined to present further evidence, relying on what they had already presented. Neither did the Tax Commissioner offer additional evidence. Instead, he made new findings and a new decision. The new findings were to the effect that the Messners had not rebutted the presumption created by the filing of the self-employment tax return, and the previous ruling was affirmed.

The language of the pertinent findings, on remand, of the Tax Commissioner is as follows:

"(C) The Plaintiffs-Appellants have not rebutted the presumption that all of the income from the jointly owned property is the income of the husband, Theodore Messner, one of the Plaintiffs-Appellants.

"(1) Section 57–38–31(2) in providing for income from jointly owned property to be allocated between husband and wife according to the capital interest of each, the management and control exercised by each, and the services performed by each with respect to such property or business applies in those situations where neither spouse has claimed all the income as his or her income when filing a federal income tax return for that same income.

"(2) The evidence submitted at the administrative hearing indicates that the wife, Margaret Messner, one of the Plaintiffs-Appellants, had some ownership interest of record and that she participated to some degree in the management and control and that she did perform some services, but *the evidence submitted does not establish the fact that these activities on her part were engaged in for the purpose of claiming any part of the income from the jointly owned property as her separate income for her income tax purposes.*

"(3) *There has been no express showing,* either during the time that the income from the jointly owned property was being earned, or at some point of time after it was earned, *that the income was the income of some one other than the husband's, Theodore Messner, and that it was other than his for federal income tax purposes so as to qualify this same income for the husband's self-employment tax purposes.*

"(D) Plaintiffs-Appellants have not met the requirements of Section 57–38–01.1, Section 57–38–01.2, Section 57–38–31(2) and Rule No. 50(4)(b) in that:

"(1) *Section 57–38–01.1, enacted later in time than Section 57–38–31(2), takes precedence* and expresses the intent of the legislature in that the starting point for the computation of state income tax by all taxpayers shall be federal taxable income.

"(2) *Section 57–38–01.2, enacted later in time than Section 57–38–31(2), takes precedence* and provides that federal taxable income is the starting point for computing state income taxes.

"(3) *Section 57–38–31(2), having been superseded*, must be interpreted and construed in the light of the legislative intent expressed in Section 57–38–01.1 in that a husband and wife electing to file separate state income tax returns after filing a joint federal income tax return may do so only after they have computed their separate federal taxable income under the provisions of the United States Internal Revenue Code and each then uses this recomputed federal taxable income as the starting point for computing their state income tax.

"(4) *Section 57–38–31(2), having been superseded*, must be interpreted and construed both in conjunction with and subjunctive to Sections 57–38–01.1 and 57–38–01.2 in that when income from jointly owned property is reported for federal income tax purposes as the taxable income of the husband so as to qualify that income for federal self-employment purposes in the husband's name it cannot thereafter be treated in whole or in part as someone else's taxable income for state income tax purposes.

"(5) Rule No. 50, and in particular that portion referred to as Rule No. 50(4)(b), was promulgated taking into consideration the filing provisions provided for in Section 57–38–31(2) and the intent of the legislature as expressed in Section 57–38–01.1 and provided for in Section 57–38–01.2." [Emphasis added, to point out findings we deem to be erroneous.]

It appears to us that these findings totally disregard the admonition of Judge Thompson that Mrs. Messner was not estopped by her husband's declaration, for self-employment tax purposes, of entitlement to the income from the farm. The Tax Commissioner, in the face of the first ruling of the district court, with which we agree, disregards the plain language of Section 57–38–31, subsection 2, and construes that statute as applying only "where neither spouse has claimed all the income as his or her income when filing a federal income tax return for that same income." Section 57–38–31, subsection 2, contains no such limitation. The Tax Commissioner then adds a requirement to the same section of the statute when he demands that Mrs. Messner establish that her ownership interest and participation in management and control and performance of services were "for the purpose of claiming any part of the income from the jointly owned property as her separate income for income tax purposes." There is no such requirement in the statute. The Tax Commissioner then disregards the testimony presented by the Messners in holding that there has been "no express showing, . . . that the income was the income of some one other than the husband's," and, finally, the Tax Commissioner makes a legal argument to the effect that Section 57–38–31, subsection 2, is, in effect, repealed ("superseded") by the subsequent enactment (at the same legislative session) of Sections 57–38–01.1 and 57–38–01.2. [Section 57–38–31, subsection 2, was a part of Chapter 453, 1967 Session Laws, and Sections 57–38–01.1 and 57–38–01.2 were a part of Chapter 446, 1967 Session Laws.] Without setting forth the lengthy provisions of the latter sections, suffice it is to say that we find no conflict between them and Section 57–38–31, subsection 2.

We believe the Tax Commissioner is in error in considering the self-employment tax as a part of the Federal income tax. It is true that the self-employment tax return is filed as a part of the Federal income tax return, but it appears to us that it is a separate tax, the return of which is filed with the income tax return for administrative convenience. We base this belief on the provisions of 26 U.S.C. §§ 1401 and 1402, imposing the tax and defining net earnings from self-employment, and Section 6017, imposing a duty to file a self-employment tax return if an individual has self-employment earnings of $400 or more, irre-

spective of whether an income tax return is required under Section 6012 (which requires the filing of an income tax return if one has a gross income of a considerably larger amount). Section 1401 provides, in part:

"In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax . . ."

Section 1402 defines net earnings from self-employment as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, . . ." with certain exclusions such as rentals, dividends, certain gains or losses, and wages. Thus both the imposition and the incidence of the tax, as well as the duty to file a return, are different from and in addition to the requirements of the Federal income tax laws. It therefore is our opinion that the exercise by a taxpayer of the option to claim income from property jointly owned with his wife as to self-employment tax has no bearing upon his (or her) income tax liability, State or Federal, and does not justify the Tax Commissioner's treating that election as conclusive for State income tax purposes. If the self-employment tax is a separate Federal tax, and not a part of the Federal income tax, then spouses who jointly own property may elect to report the joint income from that property jointly for Federal income tax purposes and separately as to one spouse for self-employment tax purposes, and they may allocate the income between them in their State income tax return as permitted by Section 57–38–31, subdivision 2, according to rules and regulations promulgated by the Tax Commissioner for the allocation thereof.

██ We note that the Federal Internal Revenue Code makes provision for a husband to claim all the income in a community-property State for self-employment tax purposes, regardless of the fact that the income is equally divided for income tax purposes. See 26 U.S.C. § 1402(a)(5)(A). The Internal Revenue Code makes no provision whatsoever for the resolution of similar questions arising in States which do not recognize community property, such as North Dakota, but the provision as to community-property States is an indication that the Federal authorities consider an election as to self-employment income to be irrelevant as to the right to file joint or separate Federal income tax returns. We likewise consider it irrelevant as to the right to allocate income from jointly owned property on State tax returns. We note further that the self-employment tax actually is a part of the Social Security system and provides for contributions to that system by self-employed persons. In this respect also, it is different from the income tax.

Sections 57–38–01.1 and 57–38–01.2, N.D. C.C., declare a legislative intent to simplify the State income tax laws by adopting the Federal definition of "taxable income" as the starting point for the computation of State income tax and to make adjustments to that figure to arrive at a taxable income for State income tax purposes.

██ It is our duty to reconcile the provisions of law relating to the same subject matter if we can, and particularly is this true as to statutes adopted at the same legislative session. State ex rel. Gammons v. Sorlie, 56 N.D. 650, 219 N.W. 105 (1928). Since we believe that the Federal self-employment tax is no part of the Federal income tax, but instead is a separate tax, we find no connection between the concept of "Federalizing" the State income tax, at least as to the starting point for the computation of the State tax, and the election made by the Messners as to allocation of their income for Federal self-employment tax purposes.

██ The Messners contend that Rule 50–4–b is invalid because it is beyond the authority of the Tax Commissioner to promulgate such a rule. The Tax Commissioner contends that the rule in question is authorized by the provisions of Section 57–

38–56, N.D.C.C., giving him authority to "prescribe all rules and regulations, not inconsistent with the provisions of this chapter, necessary and advisable for its detailed and efficient administration, . . . " While we recognize the authority of the Tax Commissioner to make proper rules and regulations, we find that Rule 50–4–b would be unconstitutional if applied here as the Tax Commissioner applied it, so as to forbid allocation between husband and wife of income from jointly owned property if one or the other of them had claimed the income on a Federal self-employment tax return.

Although we construe Rule 50–4–b to be valid where neither spouse seeks to negative the presumption set forth in the rule "that the spouse who claimed that income for federal self-employment tax purposes did, thereby, with the consent of the other spouse, claim all right to such income," the Tax Commissioner has misapplied the rule in this case in view of Mrs. Messner's showing that she actively participated in the labor and management of the farm operation.

We find that the decision of the Tax Commissioner is against the law and is not sustained by substantial evidence in the light of the entire record. Sec. 28–32–19, N.D.C.C.; O'Brien v. North Dakota Workmen's Compensation Bureau, 222 N.W.2d 379 (N.D.1974).

The Tax Commissioner vigorously asserts that we should follow the decisions of the Wisconsin Supreme Court in Stern v. Wisconsin Department of Revenue, 63 Wis.2d 506, 217 N.W.2d 326 (1974), and Skaar v. Wisconsin Department of Revenue, 61 Wis.2d 93, 211 N.W.2d 642 (1973). The cases are not in point. Wisconsin has no statute such as Section 57–38–31, subdivision 2, N.D.C.C., nor does Wisconsin allow income-splitting except through the device of a partnership. In Skaar, supra, the Wisconsin Supreme Court said:

"While the Wisconsin income tax is modeled upon the federal system, the personal income tax treatment of married individuals under the federal and Wisconsin tax provisions is dissimilar. Under the federal system, married individuals are permitted to file a joint return and effectively split their income even though all income and deductions belong to only one spouse. Wisconsin, on the other hand, while permitting married individuals to file jointly, taxes each spouse individually on his income and deductions and income splitting is not allowed." 211 N.W.2d 642, at 644.

Since Wisconsin has no statute allowing allocation of income between joint owners, the Skaar and Stern cases are decided solely on a determination as to whether a partnership between husband and wife existed under applicable Wisconsin law. No question of the existence of a partnership between the Messners is before us. On the contrary, we are dealing here with interpretation of a North Dakota statute and a North Dakota administrative rule, both without parallel in the Wisconsin scheme of taxation.

Since the rules and regulations quoted in this opinion, other than Rule 50–4–b, are not attacked by the Messners, we express no opinion as to their validity, nor as to the propriety of exclusion by rule of consideration of certain kinds of contributions by a wife who is a joint owner of the property and who contributes by her labors to the production of the income.

Because no good purpose would be served by sending the matter back for further consideration by the district court or the Tax Commissioner, it having been considered twice by each, we reverse and remand for entry of judgment in favor of the Messners.

ERICKSTAD, C. J., and KNUDSON, J., concur.

JOHNSON, Judge (concurring in part and dissenting in part).

I am in agreement with the analysis made by the majority opinion, particularly

as it relates to the Commissioner's position that the regulation in question creates some form of irrebuttable presumption. However, I believe the appropriate remedy to be a remand for additional proceedings before the Tax Commissioner under the Administrative Agencies Practice Act. There has been a disagreement as to the legal effect of the regulation and the statute relating to income from jointly owned property. As that question has been resolved by the opinion of this court, a factual determination should be made of the income allocated between the husband and wife according to the capital interest of each, the management and control exercised by each, and the services performed by each with respect to such property. See § 57–38–31, N.D.C.C.

Questions of fact are properly determined before the administrative agency where there is opportunity for the presentation of evidence and the examination and cross-examination of witnesses. See §§ 28–32–13 and 28–32–19, N.D.C.C. While there have been previous proceedings before the Tax Commissioner, the question has not been considered in the legal framework established by this opinion.

PAULSON, Judge (dissenting).

The Messners contend, as indicated by the majority opinion, that they are entitled to file a joint federal income tax return for the year 1970 and that Mr. Messner can claim all of the net income for the purpose of securing the ultimate in benefits from the Social Security program; and yet that they may file separate state income tax returns for the avowed purpose of paying less state income tax than would be owing had they filed a joint state income tax return. The tax commissioner has vigorously disputed the Messners' right to file separately. The question is now before this court for decision.

The parties to this action have cited §§ 57–38–01.1 and 57–38–31(2), N.D.C.C., and Rule 50(4)b, which was promulgated by the State Tax Commissioner.

Pursuant to § 57–38–01.1, N.D.C.C., the North Dakota Legislature has adopted the federal definition of taxable income as the starting point for the computation of state income tax by all taxpayers. This, in essence, results in using the taxable income from Federal Form 1040 as the basis for the North Dakota income tax return. This is true whether a person files a joint return with his spouse or a separate return. Both parties to this action are in agreement on this.

Section 57–38–31(2), N.D.C.C., states that if a person files a joint federal return but wishes to file a separate state return, the taxpayer simply cannot use the taxable income figure which was derived from the federal income tax return by simply dividing such income. He must recalculate his federal taxable income in order to obtain the starting point for the state return. This requires an allocation of income between the spouses based upon certain criteria. Section 57–38–31(2), N.D.C.C., points out the necessary criteria for this determination. It does not set out separate standards for computing taxable income, nor does it relieve the taxpayer from recalculating his federal taxable income.

In the instant case, a careful review of the record fails to show that Mrs. Messner recalculated her taxable income—she merely took one-half of the taxable income from the joint federal return. It must be kept in mind that the evidence which is germane is that evidence covering the year 1970, the income tax year which is in question, and not what may have occurred in other years. The participation and activity of the taxpayer in the year 1970 is the focal point and the crux of this action. The record is very limited on participation by the taxpayers, particularly of Mrs. Messner, in the year 1970. The primary source of income was from the sale of grain—there was apparently no income from livestock or poultry. The fact that Mrs. Messner may have owned the real estate in joint tenancy with her husband may be one criterion, but it is

not decisive. Mere ownership or joint ownership of farm property in itself does not qualify a spouse for self-employment tax purposes (Farmer's Tax Guide—1971 Edition); nor is joint tenancy ownership in itself sufficient to justify the splitting of income.

Both parties concede that the tax commissioner, pursuant to § 57–38–56, N.D. C.C., has the power to promulgate rules and regulations necessary to collect taxes which individuals owe to the State, whether they be income, sales, or use taxes. Rule 50(4)b creates a presumption that, unless expressly shown to the contrary, the spouse claiming all of the income from a joint federal return for self-employment tax purposes, claims that same income for state income tax purposes. The majority opinion further states that the self-serving, *unsworn*, and *unverified* declaration of the Messners shows that Mrs. Messner did not consent to her husband's claim of all the joint income for tax purposes. The fact that Mrs. Messner signed the joint federal income tax return belies this contention. By failing to file a self-employment tax return as required by 26 U.S.C. § 6017, she has consented to her husband's claim on all the income. In Woller v. Wisconsin Department of Taxation, 35 Wis.2d 227, 151 N.W.2d 170 (1967), the Wisconsin Supreme Court stated that the burden of showing an error in a tax assessment is on the taxpayer. The Messners concede that the burden is upon them. We adhere to this rule. See generally Evangelical Luth. G. Sam. Soc. v. Board of Cty. Com'rs, 219 N.W.2d 900 (N.D.1974); Y.M. C.A. of N.D. State Univ. v. Board of County Com'rs, 198 N.W.2d 241 (N.D.1972). The promulgation of such rules by the tax commissioner, of course, is limited by constitutional restrictions. The application of constitutional prohibitions concerning the collection of taxes has been and still is considered in a distinct category—State ex rel. Haggart v. Nichols, 66 N.D. 355, 265 N.W. 859 (1936), Syll. ¶¶ 5, 6, 7, 8, & 9—as opposed to protection of the constitutional rights of a defendant charged with a crime.

Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351, reh. den. 411 U.S. 910, 93 S.Ct. 1523, 36 L.Ed.2d 200 (1973).

In the instant case the majority opined that Rule 50(4)b is not unconstitutional per se but is unconstitutional in its application to this case. This court, in Tang v. Ping, 209 N.W.2d 624 (N.D.1973), in paragraph 1 of the syllabus, held:

"A statute that defines adulthood with different ages for males and females, when applied to the Unsatisfied Judgment Fund law, produces an unconstitutional result in that equal protection of the law is denied to males aged eighteen through twenty. . . . "

The factual situation in the *Tang* case distinguishes it from the case at bar. Likewise, in Boeing Company v. Omdahl, 169 N.W.2d 696 (N.D.1969), and in Souris River Telephone Mutual Aid Corp. v. State, 162 N.W.2d 685 (N.D.1968), this court upheld the authority of the tax commissioner with reference to various taxes imposed by the tax commissioner. We accordingly disagree with the majority that there was substantial evidence submitted by the Messners to show that there was in effect an error in the assessment. Again, there is no substantial evidence in the record to show Mrs. Messner's contributions for the 1970 tax year. This court has often held that the decision of administrative agencies will be upheld, provided there is substantial evidence in support of the actions of the various administrative agencies. Soo Line Railroad Company v. City of Wilton, 172 N.W.2d 74 (N.D.1969); Application of Northern States Power Co., 171 N.W.2d 751 (N.D.1969); George E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau, 171 N.W.2d 104 (N.D.1969); and Williams Electric Cooperative, Inc. v. Montana-Dakota Utilities Co., 79 N.W.2d 508 (N.D.1956).

The majority opinion has adopted the view that the self-employment tax is not an integral part of the income tax and, there-

fore, the filing of a self-employment tax return by Mr. Messner does not bar or estop Mr. and Mrs. Messner from splitting their income and that the tax commissioner was unjustified in treating the Messners' election as conclusive for state income tax purposes. A perusal of §§ 1401 and 1402 of 26 U.S.C. leads me to a diametrically opposing conclusion, especially in light of the decision of the Fifth Circuit Court of Appeals in Cain v. United States, 211 F.2d 375, 377, cert. den. 347 U.S. 1013, 74 S.Ct. 868, 98 L.Ed. 1136 (1954), in which the Circuit Court stated:

> "What in short is in question here is not the power of congress to lay impost and excises. It is whether congress has the power to impose and collect from employees, self or otherwise employed, taxes on the income received from their employment in addition to other income taxes imposed upon them. We see no difficulty in the way of its so doing. Congress can constitutionally, in imposing income taxes, distinguish between earned and unearned income and between income from various kinds of property and occupations, and has often done so. The imposition and collection of an additional income tax on the income of persons not self employed has been going on without contest or question for many years. We think it clear that persons receiving income from self employment can be subjected to additional income taxes on the moneys so received in the same way and to the same extent that persons not self employed can be and are being so subjected."

The Court, in *Cain*, 211 F.2d at 378 *supra,* again stated:

> "Neither can we find any [warrant] for the view that it [Congress] cannot do what it has done and is doing here, legally impose and legally collect an additional income tax on income derived from self employment, just as it can do, and has long been doing, legally impose and as legally collect an additional income tax from persons otherwise employed."

I believe our court should adhere to this holding.

I also disagree with paragraph 3 of the syllabus in the majority opinion, based on the reasons set forth, *supra,* in this dissent, because the Messners, by filing a joint federal income tax return and then filing separate state income tax returns brought themselves within the purview of Rule 50(4)b by their own choice. The majority opinion further does not point out what, if any, individual rights have been abridged by Rule 50(4)b, or that it results in an invidious discrimination to a particular class of persons. I again cite Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351, *supra,* for its discussion of constitutional prohibitions. As previously mentioned, this court has held that a statute is not unconstitutional on the ground that it discriminates against a certain class of people as long as the persons within that class are treated equally. State v. Gamble Skogmo, Inc., 144 N.W.2d 749 (N.D.1966); Souris River Telephone Mutual Aid Corp. v. State, 162 N.W.2d 685 (N.D. 1968); and State ex rel. Haggart v. Nichols, 66 N.D. 355, 265 N.W. 859 (1936). Therefore, adopting the rationale of the above cases, Rule 50(4)b is not unconstitutionally applied by the tax commissioner as evidenced by the facts in the instant case. Furthermore, the Supreme Court of Wisconsin, in Skaar v. Wisconsin Department of Revenue, 61 Wis.2d 93, 211 N.W.2d 642, 645 (1973), quoted with approval from Commissioner of Internal Revenue v. Tower (1946), 327 U.S. 280, 291, 66 S.Ct. 532, 90 L.Ed. 670, in which the United States Supreme Court stated that:

> " '. . . transactions between husband and wife calculated to reduce family taxes should always be subjected to special scrutiny.' "

While I believe that a taxpayer is allowed to avoid paying excess taxes, he should not be allowed to evade taxes that he rightfully owes. In the instant case, the Messners

**324**

chose to file a joint federal income tax return to maintain maximum social security benefits for Mr. Messner, and to avoid paying self-employment tax on their entire income. They then chose to split their income on the state income tax return to avoid paying additional state income tax. We do not believe that a husband and wife can shift income back and forth between them in order to reduce taxes on the various components of their income. The federal income tax law does not allow this activity, and, pursuant to § 57–38–31(2), N.D.C.C., neither does the North Dakota tax law.